United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 13, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-20411

Summary Calendar

_____

UNITED STATES OF AMERICA

            Plaintiff - Appellee

      v.

CLARENCE HUNTER

            Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. 4:98-CR-394

_____

Before KING, WIENER, and DEMOSS, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Clarence Hunter appeals the twenty-four-month prison sentence imposed by the district court following revocation of the supervised release term attached to his original sentence. For the following reasons, we AFFIRM the sentence imposed by the district court after Hunter's revocation

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

hearing.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 1998, defendant-appellant Clarence Hunter ("Hunter") pleaded guilty to a one-count indictment, charging him with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii).  The district court sentenced Hunter to a sixty-three-month term of imprisonment, a five-year term of supervised release, and a $100 special assessment.  As part of the conditions of his supervised release, Hunter was required to participate in a program, inpatient or outpatient, for the treatment of drug and alcohol addictions, as well as submit to drug testing as directed by his probation officer.

Hunter's term of supervised release commenced on April 11, 2003.  Hunter's probation officer, Bryan Demar ("Demar"), periodically filed reports alleging violations of the conditions of Hunter's supervised release, three of which are relevant to the instant appeal.  On April 7, 2004, Demar filed a report alleging that Hunter had submitted urine specimens that tested positive for cocaine on March 11 and 24.  Demar did not recommended any adverse action at this time, which allowed Hunter to remain in an outpatient drug treatment program.  The district court concurred with this recommendation.  On June 9, 2004, Demar filed another report alleging that Hunter had tested positive for

cocaine on May 14. Once again, Demar did not recommend any adverse action in light of Hunter's voluntary admission to a residential drug treatment facility for a period of not less than forty-five days, and the district court concurred with this recommendation. On September 16, 2004, Demar filed yet another report alleging that Hunter had again tested positive for cocaine on August 2 and had failed to participate in drug treatment as directed. Demar did not recommend any adverse action in light of Hunter's voluntary admission to a drug treatment facility for a period of not less than ninety days, and the district court again concurred with this recommendation.

On April 27, 2005, Demar filed a Petition for Warrant or Summons for Offender Under Supervision, which cited the earlier reports and alleged that Hunter had again violated the terms of his supervised release in the following two ways: (1) submitting urine specimens that tested positive for cocaine on March 31 and April 9 and admitting to usage of cocaine before each failed test; and (2) failing to participate in the Bonita House of Hope Residential Substance Abuse Program after being terminated for urinating on the property outside of his assigned cottage in public view. The district court granted the warrant, and Hunter was arrested on May 4, 2005.

The district court conducted a revocation hearing on May 13, 2005. Hunter pleaded true to the first allegation, which related to the failed drug tests, but he qualified his plea by stating

that the two positive urine samples were the result of a single instance of cocaine use. The government disagreed and indicated that it had a witness who was prepared to testify that there were two distinct instances of drug use. Hunter pleaded not true to the second allegation because he did not believe that his termination from the drug facility constituted a violation of his condition to participate in drug treatment.

During the hearing, Demar testified that Hunter admitted to separate instances of cocaine use before each failed drug test mentioned in the first allegation. Demar and Bonita House Director Tyrone Evans also testified about the public urination episode that resulted in Hunter's termination from the drug facility for being disrespectful and failing to comply with the rules of the facility. Testifying on his own behalf, Hunter told the court about his cocaine problem dating back to the 1960s and admitted to using the drug during his supervised release term, particularly in March 2005. He maintained, however, that he did not use cocaine before every failed drug test. He also attempted to explain the public urination incident as being the result of an urgent need and a lack of access to available indoor restrooms at the time.

Upon completion of the witness testimony, the district court concluded that both allegations were true, specifically finding that there had been separate instances of drug use underlying each failed test. The court then permitted counsel for the

defendant and government to make arguments about the appropriate sentence to impose.  Hunter's counsel argued that his client was making an effort to address his drug problem and deserved another chance before the court revoked his supervised release.  He alternatively requested a sentence at the bottom end of the Sentencing Guidelines range with no additional supervision.  The government disagreed, citing the multiple occasions in which Hunter had violated the conditions of his supervised release and his failure to be forthright about the purportedly separate instances of cocaine use underlying the first allegation.  Accordingly, the government urged the court to sentence Hunter to twenty-four months in prison with access to the drug treatment programs provided by the Bureau of Prisons, followed by no additional period of supervised release.

After a brief colloquy with Hunter about his repeated violations of the conditions of his supervised release, the district court imposed its sentence.

> I've reviewed the supervised release revocation worksheets prepared by the probation office.  The statutory term of imprisonment allowable pursuant to 18 United States Code, Section 3583[(e)] is 3 years. According to the Chapter 7 computations in United States Sentencing Guidelines Section 7B1.4, the revocation imprisonment range for a criminal history category of II and a Grade C violation is 4 to 10 months.
> After considering the Chapter 7 policy statements, it is the judgment of this Court that the defendant Clarence Hunter's term of supervised release in Cause No. 4:98-Criminal-394 is revoked.  Mr. Clarence Hunter is sentenced to the custody of the Bureau of Prisons for a term of imprisonment of 24 months.
> The Court recommends no supervised release to

-5-

follow.  The special assessment originally imposed has already been paid.  The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 24 months.  This revocation sentence is imposed pursuant to the Chapter 7 policy statements and addresses the sentencing objectives of punishment, incarceration, and deterrence in accordance with 18 United States Code, Section 3553(c).  The defendant has been detained without bail since his arrest and is remanded to the custody of the United States Marshal.

The defendant is advised that he does have the right to appeal this judgment pursuant to Rule 32(c)(5).

1 Supp. R. at 50-51.  Hunter timely appealed his sentence on May 16, 2005.

## II.  DISCUSSION

Hunter challenges the district court's imposition of a sentence in excess of the advisory range of four to ten months applicable for his violation of supervised release pursuant to the policy statement in U.S. SENTENCING GUIDELINES MANUAL § 7B1.4(a) (2005) (providing a table of advisory imprisonment ranges upon revocation of supervised release based on the grade of violation and criminal history category of the defendant at the time of the original sentence).  More specifically, Hunter argues that the district court did not sufficiently articulate its reasons for departing from this advisory range with respect to the relevant sentencing factors under 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3553(c)(2) (requiring the sentencing court to state "the specific reason for the imposition of a sentence different from that described" in the applicable guidelines or policy

-6-

statements).  The government responds that the transcript from the revocation hearing demonstrates that the sentence was reasonable in light of the § 3553(a) sentencing factors.

As an initial matter, the parties disagree about the appropriate standard of review to apply to the instant matter. Because the district court sentenced Hunter after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), Hunter contends that this court should review the sentence for reasonableness.  See United States v. Duhon, 440 U.S. 711, 714 (5th Cir. 2006); United States v. Smith, 440 U.S. 704, 706 (5th Cir. 2006).[1]  The government argues, however, that this court should review only for plain error because Hunter failed to object to his sentence at the conclusion of the revocation hearing.  See United States v. Gonzales, 250 F.3d 923, 930 (5th Cir. 2001).[2]

The court, not the parties, determines the proper standard of review to guide our analysis.  United States v. Vonsteen, 950 F.2d 1086, 1091 (5th Cir.) (en banc), cert. denied, 505 U.S. 1223

---

[1]  In reviewing a sentence for reasonableness, we assess whether the statutory sentencing factors under 18 U.S.C. § 3553(a) support the sentence.  Duhon, 440 F.3d at 715. Although a court should articulate fact-specific reasons for its sentence, we recognize that the court need not make a "checklist recitation" of the sentencing factors.  Smith, 440 F.3d at 707.

[2]  In reviewing for plain error, we may correct forfeited errors only if (1) there is an error, (2) that is clear or obvious, and (3) that affects the defendant's substantial rights. Gonzales, 250 F.3d at 930 n.10.

(1992).  In United States v. Hinson, this court affirmed a revocation sentence, noting that "the concerns that led the Supreme Court to hold that mandatory sentencing guidelines violated the Sixth Amendment do not exist with regard to sentences imposed when supervised release is revoked."  429 F.3d 114, 117 (5th Cir. 2005).  The Hinson court, however, expressly declined to decide "whether the 'plainly unreasonable' standard in subsection 3742(a) continues to apply to sentences imposed upon revocation of supervised release or whether Booker's 'unreasonableness' standard governs" because the sentence "passe[d] muster under either and was not imposed in violation of law."  Id. at 120.  Similarly, we need not decide the precise issue of whether plain-error review applies based on Hunter's alleged failure to preserve his challenge in the district court because we conclude that his sentence satisfies the more exacting reasonableness inquiry under Booker.  See United States v. Hidalgo-Peralta, 166 F. App'x 762, 763 (5th Cir. 2006) (citing Hinson and declining to decide whether the proper standard of review was plain error or reasonableness because the sentence imposed after revocation was "proper under either standard").[3]

---

[3]  In any event, it appears that Hunter preserved his challenge to the sentence by requesting that the district court not revoke his supervised release or, in the alternative, impose a sentence at the low end of the Guidelines range of four to ten months.  See Hidalgo-Peralta, 166 F. App'x at 763 (noting, without deciding the issue, that the defendant "appear[ed] at sentencing to have preserved this issue by requesting a concurrent sentence").

Upon our review of the record, we are abundantly satisfied that the district court took into account the relevant sentencing factors under 18 U.S.C. § 3553(a) and the advisory imprisonment range under the policy statement in § 7B1.4 of the Sentencing Guidelines before imposing a term of twenty-four months in prison without any additional supervised release. First, as the district court correctly noted, the statutory maximum sentence upon revocation of a term of supervised release is three years in prison if the underlying offense is a class B felony.[4] See 18 U.S.C. § 3583(e)(3). Hunter's sentence therefore fell below the applicable statutory maximum. We have routinely upheld revocation sentences in excess of the advisory range but within the applicable statutory maximum with respect to the underlying offense. See, e.g., United States v. Jones, No. 05-30665, 2006 WL 1519458, at *1 (5th Cir. May 25, 2006); United States v. Boykin, No. 05-50704, 2006 WL 616031, at *1 (5th Cir. Mar. 13, 2006); United States v. Green, 162 F. App'x 283, 284 (5th Cir. 2006) ("The policy statements applicable to probation revocations are advisory only and do not contravene the rule in Booker or the Sixth Amendment.").

Moreover, after listening to witness testimony and reaching a decision about the allegations, the district judge engaged in a

---

[4] Indeed, Hunter does not dispute that the applicable statutory maximum term of imprisonment qualified his underlying drug offense as a Class B felony. Compare 21 U.S.C. § 841(b)(1)(B)(ii) with 18 U.S.C. § 3559(a)(2).

-9-

colloquy with Hunter about his repeated failures to abide by the conditions of his supervised release--specifically focusing on Hunter's apparent unwillingness to seriously commit to his rehabilitation[5]--before announcing the sentence.  See 18 U.S.C. § 3553(a)(1) (instructing the court to take into account "the nature and circumstances of the offense and the history and characteristics of the defendant" in determining the appropriate sentence); cf. United States v. Magwood, 445 F.3d 826, 830 (5th Cir. 2006) (affirming a two-year sentence imposed after a revocation hearing, despite an advisory range of four to ten months under § 7B1.4 of the Sentencing Guidelines, where the district court took the defendant's "several opportunities to reform" his drug problem into consideration).  Furthermore, as

---

[5]  More specifically, the district court said the following to Hunter during the revocation hearing.

> When Mr. Demar tells you, If you don't get with the program, you're going back to jail, . . . . you view that as him being overbearing and mean to you and so it's his fault, not your fault.
> So I don't really think that you will ever -- and no matter how many classes you go to, no matter how well you participate -- I'm sure you do.  I'm sure you do participate but there are two things going on.  Number one, it's somebody else's fault, and, number two, I'm smarter than the rest of these people. And you are.  You probably are smarter, but the point is, you're never going to get anything out of the program unless you get rid of those attitudes. . . . So I don't think it will do you any good for me to send you to any program, because you just don't really -- deep down inside, you don't really want to quit cocaine because you enjoy it and you admitted you enjoy it.

1 Supp. R. at 44-45.

the government correctly pointed out during the hearing, Hunter would have access to any drug treatment programs offered by the Bureau of Prisons during his period of incarceration.[6] See United States v. Pena, 125 F.3d 285, 288 (5th Cir. 1997) (noting that the district court's consideration of drug rehabilitation while serving a revocation sentence in prison is appropriate under 18 U.S.C. § 3553(a)(2)(D)). Therefore, based on our review of the sentencing transcript, we conclude that the district court adequately considered the relevant sentencing factors under § 3553(a) and reached a sentence that was reasonable in light of the circumstances.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court after Hunter's revocation hearing.

---

[6] We also note that Hunter's reliance on the Second Circuit's decision in United States v. Lewis, 424 F.3d 239 (2d Cir. 2005), is misplaced. In Lewis, the government made no sentencing recommendation that might have illuminated some of the district court's reasons for exceeding the advisory sentencing range under the non-binding policy statements in the Sentencing Guidelines. Id. at 242. After closely reviewing the record, the court concluded that the district court had failed to state its specific reasons for the sentence and remanded for resentencing. Id. at 249. In contrast, the district court in the instant case demonstrated due consideration of the relevant sentencing factors under § 3553(a) before adopting the government's sentencing recommendation of twenty-four months in prison without additional supervised release.

-11-