# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 23, 2007

Charles R. Fulbruge III
Clerk

No. 05-30440

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LARRY PAUL PELTIER,
Also Known as Duck,

Defendant-Appellant

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Larry Peltier appeals as unreasonable his above-guideline sentence for possession of a firearm as a convicted felon. Because the district court did not commit plain error, we affirm.

I.

Peltier pleaded guilty to one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). While executing a warrant to search for illegal narcotics in Peltier's residence, agents found cocaine residue, large amounts of cash, and an old, rusty .12 gauge shotgun stashed in an outdoor shed.

Peltier had felony convictions for cocaine distribution, simple burglary, and second degree battery. He admitted that he knew those felonies prohibited him from possessing the firearm, but he kept it for personal protection.

Peltier had a base offense level of 20, subject to a three-point reduction for acceptance of responsibility. He also had a criminal history category of V, based on five prior convictionsSSthe three felony convictions and two misdemeanor drunk driving convictions. This resulted in a guidelines range of 46 to 57 months.

Peltier urged the district court to consider deviating below the guidelines range, and he suggested that he would benefit from a halfway house. The court, however, explained at the sentencing hearing that the guideline range did "not adequately address the very true and real concerns this Court has about Mr. Peltier [and] the policies and the factors reflected in 18 U.S.C. § 3553(a)." Specifically, the court noted Peltier's long criminal history, his violence and anger problems, the dangers posed by his drunk driving, and his addiction to drugs. The court invoked numerous § 3553(a) factors, including the need for the sentence to promote respect for the law, to afford adequate deterrence, to protect the public from future crimes, and to provide needed "vocational training, medical care, or other correctional treatment in the most effective manner." See § 3553-(a)(2)(A)-(D). The court added,

> I don't think he's going to be able to beat his addiction on the out-
> side by himself. I don't think he's going to be able to handle his an-
> ger problems on the outside by himself. I don't think he has the

means to be able to have the money to be able to get psychological counseling he needs in order to keep him from hitting the next time someone calls him a derogatory term or driving under the influence of either drugs or alcohol, and he could kill somebody next time.

The court sentenced Peltier to 120 months, which is the statutory maximum penalty and more than twice the maximum under the advisory guideline range. The court further explained, "[I]n part this was done to give him full opportunity to be able to get the treatment that he needs, to get the counseling that he needs because I don't think a one- or two-year program is going to help this." The court recommended that Peltier be placed in a facility with the most extensive drug treatment program. Peltier did not object to the sentence.

## II.

Because Peltier did not object, we must determine the proper standard of review.[1] Ordinarily we review non-guideline sentences for "unreasonableness" and "apply an abuse of discretion standard of review to the reasonableness inquiry."[2] Where the defendant fails to preserve an error, however, we generally apply a plain error standard, which requires considerable deference to the district court and erects a more substantial hurdle to reversal of a sentence than does the reasonableness standard.[3]

---

[1] In his brief, Peltier appears to concede that we should review for plain error. Nevertheless, we must consider the standard sua sponte because "no party has the power to control our standard of review." United States v. Vontsteen, 950 F.2d 1086, 1091 (5th Cir. 1992).

[2] United States v. Booker, 543 U.S. 220, 261 (2005); United States v. Reinhart, 442 F.3d 857, 862 (5th Cir.), cert. denied, 127 S. Ct. 131 (2006). After Booker, "reasonableness" has become both a substantive standard to be applied by the district court and a standard of review to be applied on appeal in assessing a district court's exercise of its sentencing discretion. Booker, 543 U.S. at 259-61. This court has equated Booker's "unreasonableness" standard with the abuse-of-discretion standard that governed our review of departure decisions before Congress amended the sentencing statute in 2003. United States v. Smith, 417 F.3d 483, 489-90 (5th Cir. 2005).

[3] Plain error must be "error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscar-

This court has not yet determined whether a defendant's failure to object at sentencing to the reasonableness of his sentence triggers plain error review.[4] Although other circuits have held to the contrary,[5] the Seventh Circuit has held that a defendant need not object at sentencing to preserve the error, because such a strict requirement would "create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objectionSSprobably formulaicSSin every criminal case." United States v. Castro-Juarez, 425 F.3d 430, 433-34 (7th Cir. 2005). Although that rationale could apply to any number of errors beyond the reasonableness of a sentence, the Seventh Circuit appears to have taken a Booker-is-different approach to the plain error requirement, observing that "the absence of any need to object to a sentence as unreasonable after its pronouncement" had been "an unstated assumption in our post-Booker decisions." Id. at 433.

This circuit, however, has not adopted the Booker-is-different approach. We have called the rule requiring objection to error "one of the most familiar procedural rubrics in the administration of justice."[6] United States v. Calverley, 37

---

riage of justice." United States v. Fortenberry, 914 F.2d 671, 673 (5th Cir. 1990); United States v. Adkins, 741 F.2d 744, 748 (5th Cir. 1984) (quoting United States v. Howton, 688 F.2d 272, 278 (5th Cir. 1982)).

[4] In the two cases in which the issue has arisen, we did not find need to reach the question. See United States v. Hunter, 188 F. App'x 315, 319 (5th Cir. 2006); United States v. Gonzalez-Zuniga, 230 F. App'x 404, 405 (5th Cir. 2007).

[5] See United States v. Villafuerte, 2007 WL 2737691, at *2-*3 (2d Cir. Sept. 21, 2007) (applying plain error standard to unpreserved claim of Booker unreasonableness); United States v. Eversole, 487 F.3d 1024, 1029 (6th Cir. 2007) (same), petition for cert. filed (Aug. 14, 2007) (No. 07-5985); United States v. Traxler, 477 F.3d 1243, 1250 (10th Cir. 2007) (same), cert. denied, 2007 WL 2030503 (U.S. Oct. 1, 2007) (No. 07-5301); United States v. Dragon, 471 F.3d 501, 505 (3d Cir. 2006) (same); United States v. Knows His Gun, III, 438 F.3d 913, 918 (9th Cir.) (same), cert. denied, 126 S. Ct. 2913 (2006).

[6] See also United States v. Olano, 507 U.S. 725, 731 (1993) ("No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'") (quoting Yakus v. United States, 321

F.3d 160, 162 (5th Cir. 1994) (en banc). It serves a critical function by encouraging informed decisionmaking and giving the district court an opportunity to correct errors before they are taken up on appeal.[7] Booker has changed many things, but not this underlying rationale. Indeed, unlike the Seventh Circuit, we have held that defendants sentenced before Booker forfeited their right to resentencing if they did not preserve the Sixth Amendment error in the district court.[8] Booker did not change the imperative to preserve error in that instance or here.

We therefore review here for plain error. We may correct the sentencing determination only if (1) there is error (and in light of Booker, an "unreasonable" sentence equates to a finding of error); (2) it is plain; and (3) it affects substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). "Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error '"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Id. (citation omitted).

## III.

Although Peltier's 120-month sentence for keeping a rusty shotgun in a shed raises concerns about its reasonableness, any error does not appear so plain to us as to warrant reversal. Under Booker, the sentencing court must determine the applicable guidelines range and, if deviating from it, must give persuasive reasons for the deviation based on the factors listed in § 3553(a). A sentence

---

U.S. 414, 444 (1944)).

[7] See Calverley, 37 F.3d at 162 ("'This practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact.'") (quoting United States v. Atkinson, 297 U.S. 157, 159 (1936)).

[8] United States v. Guidry, 406 F.3d 314, 322 (5th Cir. 2005); United States v. Freeman, 434 F.3d 369, 379 (5th Cir. 2005).

is unreasonable if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." United States v. Smith, 440 F.3d 704, 708 (5th Cir. 2006).

Peltier argues that the district court gave insufficient weight to the applicable guidelines range and to the need to avoid unwarranted disparity in sentencing. See 18 U.S.C. § 3553(a)(4), (6). He bases this on the fact that his sentence is more than twice the length of the sentence advised by the guidelines and roughly 40 months longer than the mean sentence for firearms offenses nationally.

The court, however, did consider the guideline range but concluded that Peltier's long history of recidivism made his situation stand out from the norm. In its stated reasons, the court explained, "Mr. Peltier's criminal conduct . . . starts at age 18, and it continues without interruption, but with escalation all the way up to the present . . . ." Much of this criminal history was not reflected in Peltier's criminal history category calculated under the guidelines.[9] In the district court's view, the guidelines do not reflect Peltier's unusually long history of recidivism, and such circumstance warrants a lengthier sentence.[10]

This court has affirmed two similar above-guideline sentences where a defendant's criminal history score understated his true history and risk of recidivism.[11] Although the district court deviated strikingly far above the guidelines

---

[9] The PSR indicates ten criminal convictions dating from age 18 in 1984 through age 34 in 1999. The criminal history category reflects only five of those convictions. Moreover, Peltier had twice violated the terms of his probation by committing subsequent crimes while on probation.

[10] See § 3553(a)(1) (history and characteristics of the defendant); § 3553(a)(2)(A) (promote respect for the law); § 3553(a)(2)(B) (provide adequate deterrence); § 3553(a)(2)(C) (protect the public from future crimes).

[11] United States v. Smith, 417 F.3d 483 (5th Cir. 2005) (affirming sentence almost three times the top of the guideline range); United States v. Smith, 440 F.3d 704 (5th Cir. 2006) (affirming sentence more than twice the top of the guideline range).

range, we cannot conclude that any insufficient weight given to the guidelines constitutes plain error.

Peltier argues that the court gave significant weight to the improper factor of his socioeconomic status. The guidelines contain a policy statement specifically deeming a defendant's socioeconomic status irrelevant to his sentence.[12] By statute, Congress has also prohibited consideration of socioeconomic status.[13]

Peltier points to two references by the district court to his socioeconomic status. The court observed, "I don't think [Peltier] has the means to be able to have the money to be able to get the psychological counseling he needs," and the court later reiterated to Peltier, "I just don't think you have the resources available to you to get the help you need." Those two statements, however, emerged in context of the court's general discussion of Peltier's need for anger management and substance abuse treatment. That concern was proper and indeed related to § 3553(a)(2)(D)'s specific directive to consider the need for medical or other treatment. The district court observed Peltier's repeated failures to complete treatment and concluded that he could not "beat his addiction on the outside by himself."

We cannot easily disentangle the weight given to the proper factor of need for treatment from the weight given to the improper factor of socioeconomic status, with which the former proper factor was entwined.[14] Yet, in light of the

---

[12] See U.S.S.G. § 5H1.10; 18 U.S.C. § 3553(a)(5) (guidelines policy statements are a factor to be considered at sentencing).

[13] "The [Sentencing] Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d).

[14] But see United States v. Valdez-Gonzalez, 957 F.2d 643, 650 n.3 (9th Cir. 1992) ("Although departure on the basis of socioeconomic factors is generally impermissible, . . . courts can look to socioeconomic conditions in determining whether an otherwise permissible factor presents a sufficiently atypical situation to form a basis for departure."); United States v. Lopez, 938 F.2d 1293, 1297 (D.C. Cir. 1991) ("[T]he phrase 'socio-economic status' refers to an individual's status in society as determined by objective criteria such as education, income, and employment; it does not refer to the particulars of an individual life.").

court's strong emphasis on Peltier's general need for treatment and its reliance on other proper factors such as criminal history and risk of recidivism, any erroneous reliance on socioeconomic status was neither plain nor so essential to the judgment as to affect Peltier's substantial rights.

Peltier contends the district court made a clear error of judgment in balancing the § 3553(a) factors because it did not "rationally connect" them with the facts of the case and the resulting sentence. Specifically, Peltier objects to the absence of any expert diagnosis of his anger and addiction problems. Although the court did not rely on expert diagnosis, it based its findings on the presentence investigation report ("PSR") indicating a long history of substance abuse. Peltier did not object to facts contained in the PSR, and the court did not require an expert to rely reasonably on that report.[15]

Peltier also maintains that the court did not explain why the need for treatment demanded a 120-month sentence instead of the 46- to 57-month sentence advised by the guidelines. Though the court did give some explanation,[16] the fact that a particular treatment program might be completed before the sentence has been served does not necessarily make the longer sentence unreasonable.[17] That remains particularly so where, as here, factors other than treatment also support the sentence.

## IV.

---

[15] United States v. Caldwell, 448 F.3d 287, 291 n.1 (5th Cir. 2006) ("Even after Booker, a PSR is presumed to be sufficiently reliable such that a district court may properly rely on it during sentencing.").

[16] The court explained, "I don't think just one or two years or even three or four years is going to be able to help you get this fixed. What I'm trying to do is give you enough time to truly make a change in your life . . . ."

[17] See United States v. Larison, 432 F.3d 921, 923 (8th Cir. 2006) (holding five-year sentence not unreasonable); United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) (declaring 115-month sentence not unreasonable).

In addition to the substantive issue of reasonableness, Peltier objects to his sentence on two procedural grounds. First, he asserts the court erred in deviating from the guidelines without giving notice before sentencing of its intent to do so. Peltier concedes that this argument is precluded by binding circuit precedent, United States v. Mejia-Huerta, 480 F.3d 713, 722-23 (5th Cir. 2007), petition for cert. filed (Apr. 18, 2007) (No. 06-1381), but he raises the argument to preserve it for Supreme Court review.[18]

Second, Peltier maintains that the district court failed to attach a statement of reasons to its written order of judgment as required by § 3553(c)(2). Because Peltier did not object in the district court, we review only for plain error. It appears, however, that the court did file a statement of reasons, but that statement was erroneously omitted from the record. Counsel for the United States discovered the error after Peltier had filed his opening brief, and counsel supplemented the record by motion on March 22, 2007.

It appears the district court did in fact comply with § 3553(c)(2). Moreover, it gave a full oral explanation of its reasons at the sentencing hearing. Hence, any error that may have occurred did not affect Peltier's substantial rights.

AFFIRMED.

---

[18] United States v. Treft, 447 F.3d 421, 425 (5th Cir.), cert. denied, 127 S. Ct. 555 (2006) ("Absent an intervening Supreme Court or en banc decision or a change in statutory law, we are bound to follow a prior panel's decision.").