IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 24, 2008

Charles R. Fulbruge III
Clerk

No. 07-11047

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

ROBERT DAVID NEAL also known as, Albert Davis also known as, Michael
Skinner

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CR-335-ALL

Before KING, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Robert David Neal appeals his 327-month sentence for wire fraud, alleging
(1) that his offense was "partially completed," see U.S.S.G. § 2X1.1, and (2) that
the sentence is unreasonable under 18 U.S.C. § 3553(a). For the reasons stated
herein, we affirm the district court's sentence.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Neal concocted a scam through which he intended to collect millions in worker's compensation insurance premiums from employers, and then bilk the workers when it came time to pay claims. To pull this off, Neal claimed to be a legitimate broker from an established company with adequate funding and reinsurance. He created shell companies to further his fraud, aliases for fictitious individuals who supposedly ran such companies, and through these companies, underbid legitimate competitors. He created forms for the "policies" he issued and collected premiums. Neal hired a third-party administrator, ostensibly to pay claims, but provided it with token funding. Neal also had in place an exit strategy: in the event of a catastrophic claim, he intended to take the money he had collected as premiums and flee the country.

Additionally, Neal forged the signature of U.S. District Judge Barbara Lynn. Neal had previously been convicted of filing false tax returns, for which he served a twenty-seven month term of imprisonment. At the time of the instant offenses, Neal was serving a three-year term of supervised release. A special condition of release prevented Neal from working in the insurance business. To circumvent this, Neal drafted a court document indicating that the condition had been vacated, and affixed Judge Lynn's signature.

Neal sold his bogus worker's compensation policies to several professional employment organizations ("PEOs"). PEOs provide outsourced employee-related services to businesses, including personnel management, health benefits, and worker's compensation coverage. In 2006, Neal convinced Employers Consortium Inc. ("ECI"), a PEO, to purchase worker's compensation insurance through him. At the sentencing hearing, Andrew Cory, the former president of ECI, testified that his company had cancelled the worker's compensation for many of its clients and was in the process of enrolling them in Neal's worker's compensation scheme. Specifically, ECI intended to enroll a large client, Doctors Community

Health Care ("Doctors Community"), in Neal's insurance programs. Negotiations were at an advanced stage, but a final contract had not been signed. Had the FBI not informed ECI of the nature of Neal's fraud, Cory testified that the company would have begun paying premiums on behalf of Doctors Community within days. Prior to the FBI interceding, Neal had collected some $401,170.51 in premiums from the victims of his frauds.

On October 26, 2006, Neal was indicted for the scam. He was charged with wire fraud and aiding and abetting in Counts 1 through 4, and wire fraud in Counts 5 and 6. Count 7 was a forfeiture charge which was later dropped.

Following indictment, Neal sent numerous letters from prison in which he attempted to coerce testimony from witnesses concerning the scope of the deal with ECI and Doctors Community. Neal wrote to Lawrence Hoover, who had helped Neal to incorporate his bogus companies, stating that if they were able to "lift [the ECI deal] off of us, the dollar amount of fraud they have on us is minimal." According to the testimony of FBI Special Agent Jody Windle, Neal also threatened the life of the Assistant U.S. Attorney prosecuting the case, attempted to recruit people to continue the scheme after he was arrested, and planned to engage in insurance fraud after serving his sentence. His letters detailed plans to have his fingerprints permanently altered, so that he could flee the country and commit frauds with impunity from an offshore location.

Neal pleaded guilty—without a plea agreement—to Counts 1 through 6 on April 27, 2007, three days before his trial was to begin.

The presentence investigation report (PSR) attributed to Neal an actual and intended loss of $11,205,034.66. The PSR took the $401,170.51 which Neal had received at the time the FBI interceded, and added to that amount the projected premiums that would have been paid by the PEOs over the course of their one-year policies. The PSR also attributed a loss of $8,000,000 to Neal arising from the insurance policies with ECI on behalf of Doctors Community.

At sentencing, Neal objected to the loss calculation. After hearing the testimony of Cory and various FBI agents concerning the scope of the fraud and the probable loss had the fraud continued unimpeded, the district court overruled Neal's objections. The court adopted the PSR and stated:

> I am persuaded . . . on the basis of testimony presented today as well as the sentencing exhibits that the intended loss should be used and that the amounts of intended loss used by the probation officer in calculating the Guidelines in the [PSR] are an accurate calculation of the intended loss with the information that is currently available in the record.

The PSR yielded an offense level of 37 and a criminal history category of III, for a Guideline range of 262–327 months. Neal contended that a sentence in this range would be unreasonable in light of the factors of 18 U.S.C. § 3553(a). The district court noted that it had considered each of the § 3553(a) factors and sentenced Neal to the statutory maximum of 240 months on each count. The court ordered that the counts were to run consecutively, so as to produce an aggregate sentence of 327 months.

## II. STANDARD OF REVIEW

Sentencing issues raised for the first time on appeal are reviewed for plain error. United States v. Peltier, 505 F.3d 389, 391-92 (5th Cir. 2007). At sentencing, a defendant need not cite specific Guideline provisions, so long as a general objection alerts the sentencing court of the defendant's disagreement with a particular application. See United States v. Ocana, 204 F.3d 585, 589 (5th Cir. 2000). Nevertheless, this circuit adheres to the requirement that defendants must object to error, in order to "encourag[e] informed decisionmaking and giv[e] the district court an opportunity to correct errors before they are taken up on appeal." Peltier, 505 F.3d at 392. In Ocana, the defendant filed an objection to the use of unadjudicated "relevant conduct" as a basis for an upward adjustment in her offense level. 204 F.3d at 589. The court held that the defendant's objection "clearly notified" the sentencing court of her disagreement with an

upward adjustment under § 1B1.3 of the Guidelines, notwithstanding her failure to provide a citation to that provision. Id.

Neal argues that the district court should have applied a three-level downward adjustment to his offense level because his fraud was a "partially completed offense." See U.S.S.G. § 2X1.1.[1] However, Neal did not make this argument in his objections to the PSR or at sentencing. The government argues that because Neal first raises this issue on appeal, the court should review for plain error. Neal acknowledges that he did not previously raise the argument. However, he contends that because the sentencing hearing largely focused on the fairness of holding him accountable for the $8,000,000 intended loss to ECI and Doctors Community, he preserved the issue. In the alternative, in the event he has not preserved the issue, he asks the court to apply a "more searching standard than plain error."

Loss calculation and the "partially completed" nature of an offense are distinct matters. Compare U.S.S.G. § 2B1.1 (loss calculation), with U.S.S.G. § 2X1.1 (partially completed offense). It is not reasonable to contend that by challenging the relevance and accuracy of loss calculation under § 2B1.1, Neal gave the district court an opportunity to consider whether the crime should be treated as a "partially completed offense" under § 2X1.1, and correct errors in its calculation of the Guideline range. Cf. Peltier, 505 F.3d at 392. This is not a case where the defendant merely failed to provide a citation to a given provision, but the district court was "clearly notified" of the substance of the objection. Cf. Ocana, 204 F.3d at 589. Therefore, Neal did not raise this objection.

Neal does not persuade when he argues that a "more searching" standard of review than plain error is appropriate when reviewing a sentence. First, he cites United States v. Brown for the proposition that "closer scrutiny may also

---

[1] The 2006 edition of the Guidelines was used in the preparation of the PSR. Therefore, all references to the Guidelines in this memorandum are to the 2006 edition.

be appropriate when the failure to preserve the precise grounds for error is mitigated by an objection on related grounds." 555 F.2d 407, 420 (5th Cir. 1977) (quotation and internal punctuation omitted). Brown concerned constitutional errors and therefore its ruminations on the level of scrutiny are of diminished salience in the sentencing context. Second, the basic principle of Brown is evident in Ocana: an objection may preserve error despite being phrased in general or non-technical terms, so long as the substance of the objection is reasonably apparent. As discussed above, Neal's objections to loss calculation simply did not alert the district court to potential arguments under § 2X1.1.

Neal also cites United States v. Saro, in which a circuit court noted that the interests of finality and judicial economy are lessened when a defendant seeks re-sentencing, as opposed to a new trial. 24 F.3d 283, 287-88 (D.C. Cir. 1994). However, in Saro the district court had misapplied the Guidelines, and the appellate court considered only how to apply the plain error standard. See id. As will become apparent, the district court in this case did not misapply the Guidelines—there was simply no error. Therefore Saro is not on point.

In sum, Neal did not adequately present his § 2X1.1 objection to the sentencing court. Our review is for plain error. Under this standard, the court "may correct the sentencing determination only if (1) there is error (and in light of Booker, an 'unreasonable' sentence equates to a finding of error); (2) it is plain; and (3) it affects substantial rights." Peltier, 505 F.3d at 392. If Neal makes this showing, this court may correct the error, but should not exercise its discretion to do so unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). In determining whether the district court committed an error, the court reviews the application of the Guidelines de novo, and will overturn findings of fact only if they are clearly erroneous. United States v. Ikechukwu, 492 F.3d 331, 333 (5th Cir. 2007); United States v. Smith, 440 F.3d 704, 706 (5th

Cir. 2006). The court treats Guidelines commentary as authoritative, applying the plain, ordinary and commonly understood meaning of the words. United States v. Gonzalez-Ramirez, 477 F.3d 310, 312 (5th Cir. 2007).

## III. DISCUSSION

### A.   Partially Completed Offense

Neal argues that his fraud against ECI and Doctors Community was a "partially completed offense," and therefore, the district court should have applied a three-point downward adjustment in his offense level under § 2X1.1 of the Guidelines.[2]

Neal notes that he never obtained a cent of the $8,000,000 in premiums attributed to him under the deal with ECI and Doctors Community. He admits that negotiations were at an advanced stage, but emphasizes that no contract was signed. He also contends that several important events had not yet occurred which would have been essential to Neal's ability to obtain the premiums: Doctors Community had not signed the deal with ECI; Neal had not yet provided certain documentation to ECI; and "most importantly, Mr. Neal could have changed his mind and elected not to continue with the fraudulent activity." The government responds that because Neal pleaded guilty to the completed offense of wire fraud, the adjustment under § 2X1.1 is per se inapplicable, despite the fact that Neal never received funds under the deal with ECI and Doctors Community. Alternately, the government contends that, under the plain language of § 2X1.1, this particular fraud was too far along to be considered "partially completed."

Wire fraud is complete when a defendant makes a communication to advance what he knows to be a fraudulent scheme. 18 U.S.C. § 1343; see United States v. Nguyen, 504 F.3d 561, 568 (5th Cir. 2007), cert. denied, 128 S. Ct. 1324

---

[2] Neal does not appeal loss calculation or the upward adjustments which initially yielded an offense level of 37, nor his criminal history category of III.

(2008); United States v. Lemons, 941 F.2d 309, 317-18 (5th Cir. 1991); United States v. Tulaner, 512 F.3d 576, 580 (9th Cir. 2008). Because the actus reus is the communication, whether the defendant actually obtains the funds or property he sought is immaterial to his criminal liability. See United States v. Wharton, 320 F.3d 526, 538 (5th Cir. 2003); Tulaner, 512 F.3d at 580. For sentencing purposes, the offense level for wire fraud is to be determined in accordance with § 2B1.1 of the Guidelines. When a defendant is prosecuted before realizing the fruits of his frauds, courts must grapple with the proper loss calculation. See § 2B1.1, app. n. 3(A) (stating that "loss is the greater of actual loss or intended loss"). Additionally, application note 17 directs the sentencing court to apply § 2X1.1 in the case of a "partially completed offense (e.g. an offense involving a completed theft or fraud that is part of a larger, attempted theft or fraud)." § 2B1.1, app. n. 17. This rule applies "whether the conviction is for the substantive offense, the inchoate offense . . . or both." Id.

The basic rule of § 2X1.1 is that inchoate offenses (conspiracies, attempts, and solicitations) receive the same base offense level as the substantive offense, "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." § 2X1.1(a). To illustrate: when a defendant is convicted of an attempt, the court shall decrease the offense level by three points, "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." § 2X1.1(b)(1).[3] Thus, the language of § 2X1.1 contemplates situations in which a substantive fraud offense is complete, but is a part of a "larger, attempted theft or fraud." In such a case, loss is calculated under §

---

[3] Similar rules apply to conspiracies and solicitations. See U.S.S.G. § 2X1.1(b)(2)-(3).

2B1.1, with a three-level downward adjustment under § 2X1.1. Conversely, even if the defendant has been convicted of the inchoate offense for theft or fraud (and not the substantive offense), a downward adjustment under § 2X1.1 is inappropriate if the defendant was close to completing the substantive offense. The Background Commentary to § 2X1.1 confirms the inference that this adjustment is to be used sparingly:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2).

The Fifth Circuit has never addressed the application of § 2X1.1 to a wire fraud conviction. The Circuit has applied this particular provision in the context of bank fraud, which, like wire fraud, does not require that a defendant actually obtain any of the targeted money or property. See 18 U.S.C. § 1344; United States v. Oates, 122 F.3d 222 (5th Cir. 1997); United States v. Blackburn, 9 F.3d 353 (5th Cir. 1993). However, in this appeal we expressly decline to address whether, and under what circumstances, substantive wire fraud convictions should be eligible for a reduction under § 2X1.1. Rather, the facts of this case demonstrate that the offense was not "partially completed" for purposes of § 2X1.1. Cory's undisputed testimony demonstrated that Neal was within days of receiving the first premium payment on the deal with ECI and Doctors Community.[4] Neal places great weight on the absence of a final signed contract, as well as the assertion that due diligence had not ended when the FBI alerted

---

[4] Neal contends that Cory's statements are not reliable because Cory had a "significant financial interest" in this case—presumably because he was a victim. However, Neal has not demonstrated that reliance on Cory's testimony was clearly erroneous.

ECI of the fraud. However, this is of little consequence: Neal had convinced ECI to cancel its clients' existing worker's compensation insurance in anticipation of switching over to Neal's "insurance." Moreover, Neal's suggestion that he might have pulled out of his fraud rings hollow: he attempted to recruit others to continue his scheme after arrest and indictment.

The evidence at sentencing amply demonstrated that Neal was "on the verge of completion" of his fraud, see § 2X1.1 cmt. background, and would have begun receiving worker's compensation premiums from ECI "but for apprehension or interruption" by the FBI, see § 2X1.1 app. n. 4. Thus, Neal's conduct falls short of meeting the plain language of the application notes to § 2X1.1. Because there was no error on the part of the district court, we reject Neal's argument that he is entitled to a three-level reduction in his offense level.

B.    Reasonableness

We now turn to Neal's argument that his 327-month sentence is unreasonable under 18 U.S.C. § 3553(a). Following the Supreme Court's decisions in Rita v. United States, 127 S. Ct. 2456 (2007), and Gall v. United States, 128 S. Ct. 586 (2007), this court applies a two-step procedure when reviewing a sentence for substantive reasonableness. United States v. Rodriguez-Rodriguez, 530 F.3d 381, 384-85 (5th Cir. 2008). First, the court determines whether the sentencing court has committed a significant procedural error, such as miscalculating the proper Guideline range, treating the Guidelines as mandatory, or failing to consider the factors of 18 U.S.C. § 3553(a) when making an individualized assessment of the proper sentence. See Gall, 128 S. Ct. at 597. If the first step reveals no error and the sentence is within the Guideline range, the court then applies a presumption of reasonableness and reviews the sentence under a deferential abuse-of-discretion standard. See Rodriguez-Rodriguez, 530 F.3d at 384-85, 389; see also Gall, 128 S. Ct. at 597 ("The fact that the appellate

court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

For a within-Guidelines sentence, the court may "infer that the judge has considered all the factors for a fair sentence set forth in the guidelines." United States v. Mares, 402 F.3d 511, 519-20 (5th Cir. 2005). A presumption of reasonableness may normally only be overcome if the sentence "falls so far afoul" of the following standards as to demonstrate that the sentencing court abused its broad discretion: the sentence "(1) does not account for a factor that should have received significant weight; (2) gives significant weight to an irrelevant factor; or (3) represents a clear error of judgment in balancing the sentencing factors." United States v. Nikonova, 480 F.3d 371, 376 (5th Cir.) (quoting Smith, 440 F.3d at 708), cert. denied, 128 S. Ct. 163 (2007).

First, Neal contends that the sentence grossly overstates the seriousness of the offense. He argues that holding him accountable for over $11,000,000 in actual and intended loss is wholly disproportionate with the true loss he caused, which he calculates to be $151,392.91. He emphasizes that $8,000,000 of the loss attributed to him arises from the deal with ECI and Doctors Community, and is a "speculative amount." Neal notes that without the $8,000,000 added to the loss calculation, his Guideline range would have been 210–262 months. Neal argues that because this one figure vastly increased his Guideline range, the 327-month sentence, the maximum under the Guidelines, is unreasonable. Neal provides no authority to show how inclusion of the loss can be proper under § 2B1.1 of the Guidelines but yield an unreasonable result in light of the seriousness of the offense. It was proper to increase the offense level in light of Neal's audacious scheme, which had the potential to leave thousands without worker's compensation insurance. The sentencing court's consideration of these matters is amply reflected in the record of the sentencing hearing; therefore, the court's

decision to sentence Neal to the high end of the Guideline range was not an abuse of discretion for this reason.

Second, Neal contends that the sentence is greater than necessary to incapacitate him, to deter future crimes (by Neal or others), or to promote respect for the law. He notes that he will be well over eighty before he serves his full sentence. He contends that the length of his sentence disregards any chance or hope of rehabilitation. Neal notes that he first became involved in criminal enterprises after the age of fifty, when his marriage dissolved and he became severely depressed. While the government agrees that recidivism might generally decline with age, it posits that Neal is different: his criminal activities have all come after age fifty, he demonstrated no intent to give up unlawful activity after indictment, and he even devised future frauds to carry out after he served his sentence.

Advanced age does not preclude a long sentence. See U.S.S.G. § 5H1.1 ("Age (including youth) is not ordinarily relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm . . . .") (emphasis added); United States v. Simmons, 470 F.3d 1115, 1130-31 (5th Cir. 2006) (holding that a sentencing court must explain a decision to grant a downward departure based solely on advanced age), cert. denied, 127 S. Ct. 3002 (2007). Here, it is not clear whether the district court considered Neal's age. However, the court heard evidence not only regarding Neal's pre-indictment conduct, but also his efforts to obstruct justice, coerce witnesses, and continue his scheme after he was indicted. While Neal might spend the rest of his life incarcerated, his flagrant disregard for the law suggests that a long sentence is the best way to incapacitate him. His sentence also makes clear that wire fraud is not a victimless crime, but here, had the potential to disrupt the lives of thousands of individuals. Neal's lengthy sentence demonstrates that such behavior is intolerable.

Finally, Neal contends that the sentencing judge did not consider the fact that his guilty plea saved resources by avoiding a lengthy trial. This argument is specious. The government still had to prepare for a lengthy trial because Neal pleaded guilty on the brink of trial, over six months after he was indicted. What is more, the government's job was complicated by Neal's efforts to influence witness testimony and threaten those prosecuting him.

In sum, the district court committed no significant procedural error and considered the § 3553(a) factors. We cannot say that the district court's sentence should be vacated as an abuse of discretion.

AFFIRMED.