# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40442

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARIO LEONEL ACCITUNO,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CR-1443-2

Before STEWART, Chief Judge, CLEMENT and ELROD, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Mario Leonel Accituno appeals his 57-month sentence imposed for participating in a conspiracy to conceal, harbor, and shield illegal aliens from detection in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(iii), and 1324(a)(1)(B)(i). For the reasons stated herein, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40442

## I.

According to the record, on September 5, 2013, Accituno conspired with Juan Ruiz-Rivera and Pedro Gonzalez-Francisco to harbor illegal aliens in a residence ("the stash house") in Mission, Texas.  After Accituno and Ruiz-Rivera arrived at the stash house on that date, federal agents executed a search warrant and detained five illegal aliens.  A subsequent investigation revealed that Accituno furthered the unlawful purpose of the conspiracy by delivering food on several occasions to the stash house where the illegal aliens were being harbored and, on at least two separate occasions, drove the undocumented aliens to the house following car accidents.  The investigation also indicated that Accituno was responsible for harboring more than 100 illegal aliens at the stash house, that his offense created a substantial risk of serious bodily injury, and that a 17-year-old girl who was harbored at the stash house died during the course of the events involving the alleged conspiracy.

## II.

On October 1, 2013, Accituno was charged with conspiracy.  After pleading guilty, the district court applied three separate sentencing enhancements totaling 21 levels, and sentenced Accituno to 57 months imprisonment.  While Accituno objected to the enhancement, he did not object to the 57-month sentence as imposed.

Accituno asserts five main errors on appeal: (1) the district court erred when it found Accituno responsible for harboring more than 100 aliens and imposed a nine-level sentencing enhancement under U.S.S.G. § 2L1.1(b)(2)(C); (2) the district court erred when it found that Accituno's offense created a substantial risk of serious bodily injury and imposed a two-level enhancement under U.S.S.G. § 2L1.1(b)(6); (3) the district court erred when it found that a person died during the course of Accituno's offense and imposed a ten-level enhancement under U.S.S.G. § 2L1.1(b)(7)(D); (4) the district court imposed an

unreasonable sentence; and (5) the district court's factual findings at sentencing violated Accituno's Sixth Amendment rights, in contravention of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

### III.

Sentencing enhancements must be proven "by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).  In determining whether an enhancement applies, "a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014) (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)).  A finding is not clearly erroneous unless it is implausible "in light of the record as a whole." *United States v. Wilcox*, 631 F.3d 740, 753 (5th Cir. 2011), *cert. denied*, 135 S. Ct. 771 (2014).

We review a sentence imposed by the district court first for procedural error and then for substantive reasonableness. *See United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  For properly preserved claims, the district court's interpretation or application of the Guidelines is reviewed *de novo*, and its factual findings are reviewed for clear error. *See United States v. Hinojosa*, 484 F.3d 337, 340 (5th Cir. 2007).  Where the defendant fails to preserve an error, however, we generally apply a plain error standard. *See United States v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007).

We review preserved constitutional claims *de novo*. *See United States v. Hernandez*, 633 F.3d 370, 373 (5th Cir. 2011).  However, we apply a plain error standard of review to constitutional challenges not raised in the district court. *See United States v. Ebron*, 683 F.3d 105, 155 (5th Cir. 2012).

No. 14-40442

**IV.**

Accituno's claims pertaining to the nine-level and two-level sentencing enhancements, as well as his contention that his sentence was unreasonable and that his Sixth Amendment rights were violated, are without merit and warrant no further discussion. Accituno's remaining claim, which involves a ten-level sentencing enhancement imposed as a result of the death of a 17-year-old illegal alien from hyperthermia, warrants further discussion.

Accituno alleges that the district court erred in imposing a ten-level enhancement under U.S.S.G. § 2L1.1(b)(7)(D) for causing another person's death. He argues first that the death predated the formation of the conspiracy and fell outside of its temporal, foreseeable and substantive scope. In the alternative, Accituno contends that he was not the "but-for" or actual cause of the illegal alien's death. We have held that a district court properly applies this enhancement if the defendant's conduct is a "but-for cause of" a person's death. *Ramos-Delgado*, 763 F.3d at 401–02. Notwithstanding Accituno's contentions, the Pre-Sentence Investigation Report indicates that Accituno was an active participant in the alien smuggling organization at the time of the illegal alien's death. Given the involvement of both Accituno and his co-conspirators in the smuggling, transporting and harboring of illegal aliens, considering the fact that the death was caused in the course of the alien being smuggled, and the fact that the death was reasonably foreseeable as a consequence of these activities, the district court did not err in applying the ten-level enhancement. *See United States v. Ramos-Ramos*, 425 F. App'x 280, 281–82 (5th Cir. 2011); *United States v. Mateo Garza*, 541 F.3d 290, 293 (5th Cir. 2008) (explaining that a defendant's sentence may be enhanced for the actions of his co-conspirators if those actions were reasonably foreseeable to him); *United States v. Valdes*, 102 F. App'x 841, 842 (5th Cir. 2004) (upholding the defendant's eight-level sentencing enhancement imposed under U.S.S.G. §

## No. 14-40442

2L1.1(b)(6) for conduct causing the death of any person as a result of the smuggling offense).[1]  Ample evidence in the records supports the finding that the challenged enhancement was reasonable.  Accordingly, we reject Accituno's challenge to the district court's application of the ten-level enhancement.

## V.

After considering the parties' arguments as briefed on appeal, and after reviewing the record, the applicable law, and the district court's judgment, we AFFIRM.

---

[1] The 2004 version of the United States Sentencing Guidelines has since been amended. The death of another, formerly warranting an eight-level sentencing enhancement under U.S.S.G. § 2L1.1(b)(6)(4), presently results in a ten-level enhancement under U.S.S.G. § 2L1.1(b)(7)(D).