**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

JIM BRYAN AUTERY,
*Defendant-Appellee.*

No. 07-30424

D.C. No.
CR-06-00387-REJ

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
October 20, 2008—Portland, Oregon

Filed February 13, 2009

Before: David R. Thompson, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Tashima

## COUNSEL

Karin J. Immergut and Gregory R. Nyhus, District of Oregon United States Attorney's Office, Portland, Oregon, for the plaintiff-appellant.

Wayne Mackeson, Portland, Oregon, for the defendant-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Defendant-Appellee Jim Bryan Autery pled guilty to possession of child pornography and entered into a plea bargain that called for the imposition of a forty-one to fifty-one month prison sentence pursuant to the United States Sentencing Guidelines. The district court deviated from the Guidelines and imposed a sentence of five years probation. The government did not object to the sentence when the district court imposed it, but now appeals, arguing that the sentence is substantively unreasonable.

We hold that the appropriate standard of review under the circumstances of this case is abuse of discretion. Reviewing the sentence under that standard, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Based on evidence obtained in a U.S. Postal Service and Immigration and Customs Enforcement sting operation, Autery was indicted in September 2006 on two counts of attempted receipt of child pornography, one count of possession of child pornography, and a forfeiture allegation. Following Autery's arrest, federal agents found at least 150 images of child pornography[1] stored in Autery's personal computers.

Autery pled guilty in May 2007 to one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(b), pursuant to a plea agreement. The pre-

---

[1]The precise number of images is disputed.

sentence report (PSR) calculated Autery's offense level to be twenty-two, and his criminal history within Category I, yielding a Guidelines range of between forty-one and fifty-one months incarceration.

Autery was sentenced before United States District Judge Robert E. Jones on October 1, 2007. Both parties and the court accepted the accuracy of the PSR sentencing calculations. The government requested that the court impose a fifty-one month sentence—at the top of the Guidelines range—and the defense urged the court to impose a sentence at the bottom of the Guidelines range. The court did neither; it deviated from the Guidelines and sentenced Autery to no period of incarceration and five years of probation. In doing so, the court explained its decision both from the bench and in a "Statement of Reasons" in a *Judgment in a Criminal Case* order.

At sentencing, the court noted that it was "required to make the determinations under the sentencing guidelines and then after that, look at the guidelines as advisory only." The court then confirmed that pro-forma application of the Guidelines would yield a range of forty-one to fifty-one months incarceration.

The court began its analysis of the appropriate sentence by noting that Autery's was "a very difficult case" because there was "no evidence that [Autery] was purchasing evident child pornography involving real children"[2] (although the court stated that Autery *believed* they were real children). The court also noted that there was no evidence of Autery's ever abus-

---

[2]The court may have been referring to the images that Autery received in the government sting operation, images which the government stated were not of real children. Count 3 of the indictment, to which Autery pled guilty, alleges that Autery possessed "visual depictions of actual minors." Regardless, the government does not argue that the district court erred in making this finding or in considering it in sentencing.

ing family members and that he did not "fit the profile of a pedophile." These facts, the court concluded, made Autery "totally different than what . . . [the] court has normally experienced with people who are ordering this sort of child pornography."

The court also described what it considered to be Autery's redeeming personal characteristics: no history of substance abuse, no "interpersonal instability," no "sociopathic or criminalistic attitudes," and that he was motivated and intelligent. The court thought it critical that Autery enjoys the continuing support of his family, especially his wife and children.

The court acknowledged that child pornography is "terrible stuff" and that it believed Autery "ordered it knowing that it was wrong and illegal." But the court found that in several ways, Autery's case differed from the "hundreds and hundreds" of other child pornography cases the court had adjudicated.

The court also believed that Autery could not "be accommodated adequately in a federal institution," and that he needed "outpatient psychiatric monitoring and management" instead. Concluding its sentencing justification, the court stated that it decided on a sentence of probation only "after a lot of soul-searching." It further determined that imposing prison time would create "a much more disruptive situation and, actually, could be more damaging than the rehabilitation [regime the court believed would] work." The court also opined in its written "Statement of Reasons" that the sentence "is fully justified in this exceptional case."

The court observed that the five-year probationary sentence "would be subject to some very special conditions of supervision." It also warned Autery, saying, "believe me, if you have any violation [of those conditions], you'll be back before me and receive the maximum penalty allowed by law." Some of the conditions of probation included a prohibition on viewing

any pornography whatsoever and on being within 100 feet of places where minors congregate unless approved by his probation officer. Autery was also not permitted to travel outside the State of Oregon without prior approval. He was required to participate in mental health evaluation and counseling, including psychotherapy, and to take any prescription drugs as directed. He was not permitted to possess any firearm, or to use any computer except for work, or, without approval, any other electronic media—such as a personal digital assistant or cellular phone—with Internet capability. In addition, Autery was not permitted to have "direct or indirect" contact with anyone under the age of eighteen, except his own children. Finally, Autery was required to register with the state sex offender registry.

After imposing sentence and discussing the terms of the probation, the court asked the government if it had anything else for the court. The government said it did not, and specifically, it did not object to the sentence or its method of determination. The government now appeals the sentence, challenging it as substantively unreasonable.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 18 U.S.C. § 3742(b)(3) and 28 U.S.C. § 1291.

Before deciding whether to uphold the district court's sentence, we must first determine the appropriate standard of review under the facts presented. After weighing Supreme Court authority, the views of other circuits, and public policy considerations, we hold that abuse of discretion is the proper standard of review in this case.

The government urges, without providing analysis, that the standard of review here is abuse of discretion. In support, it cites *Gall v. United States*, 128 S. Ct. 586, 591 (2007).

Autery, without citing any authority, urges the court to employ a plain error standard.

**[1]** Neither this circuit nor the Supreme Court has squarely addressed the proper standard of review where the appellant fails to object to the sentence's substantive reasonableness at sentencing. In *Gall*, the Court noted that after *Booker*, appellate review of sentencing decisions is limited to determining whether they are reasonable, *Gall*, 128 S. Ct. at 591, and that the abuse of discretion standard applies to review of all reasonableness sentencing questions. *Id.* at 594. However, the Court did not indicate whether this rule applies even where a party fails to object at sentencing to the substantive reasonableness of the sentence.

In *United States v. Carty*, we stated that the reviewing court "first consider[s] whether the district court committed significant procedural error, then . . . consider[s] the substantive reasonableness of the sentence." 520 F.3d 984, 993 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 597). However, *Carty* did not discuss the proper standard of review upon a party's failure to object to either alleged error.

In *United States v. Sylvester Norman Knows His Gun, III*, 438 F.3d 913 (9th Cir. 2005) (*Knows His Gun*), we considered a closely related issue that provides a useful starting point for the next step of our analysis. In *Knows His Gun*, we held that a party's failure to object "on the ground that the district court did not sufficiently address and apply the factors listed in § 3553(a)" triggered plain error review.[3] *Id.* at 918;

---

[3]Section 3553(a) of United States Code Title 18 requires the district court to consider the following factors in sentencing (the § 3553(a) factors):

    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)   the need for the sentence imposed-

*see also United States v. Waknine*, 543 F.3d 546, 553-54 & n.4 (9th Cir. 2008) (applying *Knows His Gun* and reversing in part where the district court failed to consider any § 3553(a) factors).

*Knows His Gun* and its progeny illustrate the crucial—but often-overlooked—distinction between procedural error and substantive reasonableness. *See Carty*, 520 F.3d at 993 (citing 18 U.S.C. § 3553(a)). In *Carty*, we held that "[o]n appeal, we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *Id.* Elaborating, we explained that

> [i]t would be *procedural* error for a district court to fail to calculate—or to calculate incorrectly—the Guidelines range; to treat the Guidelines as mandatory instead of advisory; to fail to consider the

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [and recommended by the Guidelines] . . . ;
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

§ 3553(a) factors; to choose a sentence based on clearly erroneous facts; or to fail adequately to explain the sentence selected, including any deviation from the Guidelines range.

*Id.* (emphasis added) (citing *Gall*, 128 S. Ct. at 597). But "[i]n determining *substantive reasonableness*, we are to consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range." *Id.* (emphasis added).

Thus, it is possible for a sentence to pass procedural muster and yet be substantively unreasonable. As a result, *Knows His Gun*'s standard of review rule for whether the district court "sufficiently address[ed] and appl[ied] the factors listed in § 3553(a)" does not apply in a case where the sentencing court carefully considered the statutory factors listed in *Carty*, and the sole issue is substantive reasonableness. That is the situation here, as the government's chief argument on appeal is that the sentence is substantively unreasonable. *See* Appellant's Br. at 10, "Summary of Argument" ("This sentence represents a departure of 41 - 51 months or 22 levels from the low end of the applicable Sentencing Guideline range . . . . This sentence is plainly 'unreasonable' under 18 U.S.C. § 3553(a)."). The government buttresses its argument with references to the § 3553(a) factors and contends that the district court's unreasonable weighing of those factors rendered the resulting sentence unreasonable, but the government alleges neither that the district court failed to address the factors, nor that it committed any other procedural error. Therefore, *Knows His Gun* does not resolve the appropriate standard of review in this case.

**[2]** While neither the Supreme Court nor this circuit has squarely resolved the standard of review at issue here, a few other circuits have done so. The slight majority of those courts has held that where no objection was made to the sentence at sentencing, the court still reviews for *abuse of discre-*

*tion* to determine whether the sentence was reasonable. *See, e.g.*, *United States v. Bras*, 483 F.3d 103, 113 (D.C. Cir. 2007) (rejecting argument that non-objecting defendant's sentence should be reviewed for plain error because "[r]easonableness . . . is the standard of *appellate* review, not an objection that must be raised upon the pronouncement of a sentence") (citation omitted); *United States v. Castro-Juarez*, 425 F.3d 430, 434 (7th Cir. 2005) (holding that "review of a sentence for reasonableness is not affected by whether the defendant had the foresight to label his sentence 'unreasonable' before the sentencing hearing adjourned"); *cf. United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006) (noting that the Seventh Circuit's *Castro-Juarez*'s standard of review applies to challenges to the reasonableness of a sentence's length, but holding that unchallenged errors in the *method* of sentence determination are still reviewed for plain error). *But see United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007) (holding that "a defendant's failure to object at sentencing to the reasonableness of his sentence" triggers plain error review).[4]

While instructive and often persuasive, other circuits' decisions do not bind this court; in the absence of controlling authority, our approach should be guided by consideration of the legal and policy rationales underlying the alternatives. *Cf. Biro v. United States*, 24 F.3d 1140, 1142 (9th Cir. 1994).

[3] In *Castro-Juarez*, the Seventh Circuit reasoned that "[t]o insist that defendants object at sentencing to preserve appellate review for reasonableness would create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection-probably formulaic-in every criminal case." 425 F.3d at 433-34. "Since the district

---

[4]Although each of the authorities establishing the abuse of discretion standard of review involves the *defendant*'s failing to object to his sentence, no principled reason exists to apply a different rule where the government similarly fails to object.

court will already have heard argument and allocution from the parties and weighed the relevant § 3553(a) factors before pronouncing sentence," the court reasoned, "we fail to see how requiring the defendant to then protest the term handed down as unreasonable will further the sentencing process in any meaningful way." *Id.* at 434.

The Fifth Circuit has taken a different approach. In defending the plain error standard, the court in *United States v. Peltier* stressed the longstanding rule that issues are not preserved for appeal unless objected to in the district court.[5] 505 F.3d at 391-92 (calling the objection rule "one of the most familiar procedural rubrics in the administration of justice") (quoting *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *abrogated on other grounds*). *Peltier* further states that the objection requirement "serves a critical function by encouraging informed decisionmaking and giving the district court an opportunity to correct errors before they are taken up on appeal." *Id.* at 392.

We find *Castro-Juarez*'s reasoning more persuasive than

---

[5]In *Peltier*, the Fifth Circuit acknowledged that the Seventh Circuit held that a defendant need not object at sentencing to the reasonableness of his sentence to preserve the issue for review, and then stated that various other circuits have taken a contrary view. 505 F.3d at 391. In support of this latter point, the court cited decisions from the Second, Sixth, Tenth, Third, and Ninth Circuits. *Id.* at 391 n.5. In so doing, however, the *Peltier* court apparently mistook the holdings of some of those cases, conflating substantive reasonableness with the procedural failure to consider the § 3553(a) factors, discussed *supra*. *See id.* (citing, *e.g.*, *United States v. Villafuerte*, 502 F.3d 204, 208-09 (2d Cir. 2007) (holding that failure to object to court's neglecting to consider the § 3553(a) factors (not to substantive reasonableness of sentence) triggers plain error review); *Knows His Gun*, 438 F.3d at 918 (holding that failure to object "on the ground that the district court did not sufficiently address and apply the factors listed in § 3553(a)" triggered plain error review)). Thus, contrary to the *Peltier* court's characterization, the circuits listed above have not all clearly held that unobjected-to sentences challenged for substantive unreasonableness are subject to plain error review.

*Peltier*'s. *Peltier* notes that a key rationale for requiring formal objection to a potential error is to allow the district court to hear and weigh the parties' positions, thus avoiding or correcting that error. 505 F.3d at 392. This rationale makes sense in many contexts, such as where the court miscalculates the Guidelines sentencing range or neglects to consider an essential statutory factor. But in a substantive reasonableness challenge, the parties have already fully argued the relevant issues (usually both in their briefs and in open court), and the court is already apprised of the parties' positions and what sentences the parties believe are appropriate. In such a case, requiring the parties to restate their views after sentencing would be both redundant and futile, and would not "further the sentencing process in any meaningful way." *Castro-Juarez*, 425 F.3d at 434.

**[4]** Therefore, for the reasons described in *Castro-Juarez*, we hold that the substantive reasonableness of a sentence—whether objected to or not at sentencing—is reviewed for abuse of discretion. We proceed to review Autery's sentence under that standard.

## DISCUSSION

In the post-*Booker* era, district courts making sentencing decisions must make the Guidelines "the starting point and the initial benchmark" for their decisions. *Gall v. United States*, 128 S. Ct. 586, 596 (2007); *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (quoting *Gall*). While district courts are not required to impose a sentence within the Guidelines, *Booker*, 543 U.S. at 249-53, they must "give serious consideration to the extent of any departure from the Guidelines," and they must then "explain [the] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Carty*, 520 F.3d at 992 (quoting *Gall*, 128 S. Ct. at 594).

The Supreme Court has emphasized that "extraordinary circumstances" are not a prerequisite to upholding a sentence

outside the Guidelines. *Gall*, 128 S. Ct. at 594 (internal quotation marks omitted). Indeed, sentences outside the Guidelines are subject to the same standard—i.e., abuse of discretion—as those within the Guidelines. *Id.* at 596 (noting that "abuse-of-discretion standard of review applies to appellate review of all sentencing decisions—whether inside or outside the Guidelines range"). And where the sentence under review is outside the Guidelines, we may not presume the sentence is unreasonable. *Id.* at 597. We may, however, "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Id.* at 595.

"While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *Carty*, 520 F.3d at 991 (citing *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007)). "[T]he Guidelines factor [may not] be given more or less weight than any other." *Id.* So while the Guidelines are the "starting point and initial benchmark" and must "be kept in mind throughout the [sentencing] process," *id.*, the Guidelines range constitutes only a touchstone in the district court's sentencing considerations. *See id.* Thus, in sum, the district court must consider both the seven § 3553(a) factors and the Guidelines when imposing sentence.[6]

Finally, appellate courts must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."[7] *Gall*, 128 S. Ct. at 597.

---

[6]Section 3553(a)(4) incorporates consideration of the Guidelines by reference, requiring the court to consider "the kinds of sentence and the sentencing range established [and recommended by the Guidelines]."

[7]The *Gall* Court repeatedly refers to "variances" from the sentencing range, instead of "departures." *Gall* was decided before *Irizarry v. United States*, 128 S. Ct. 2198, 2203-04 (2008), in which the Court clarified that the two terms continue to have legally distinctive meanings post-*Booker*. Moreover, as a concurring Sixth Circuit judge noted recently in *United States v. Smith*, "the word 'variance,' . . . has been used both precisely and

This deference is required because the sentencing judge "is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." *Id.* at 597-98 (citing *Rita v. United States*, 127 S. Ct. 2456, 2469 (2007)). Moreover, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 98 (1996)). In arriving at a sentence, a district court need not expressly state how each of the § 3553(a) factors influenced its decision: "[t]he district court need not tick off each of the § 3553(a) factors to show that it has considered them." *Carty*, 520 F.3d at 992. Instead, appellate courts "assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors, not just the Guidelines." *Id.* (citing *Walton v. Arizona*, 497 U.S. 639, 653 (1990)).

With these principles in mind, we review the district court's sentence to determine whether the court abused its discretion in imposing it. We conclude that it did not.

The government first argues that the district court did not treat the Guidelines range as a "benchmark." The sentencing transcript belies that claim. Before announcing and explaining the basis for the sentence, the district court stated that it was

---

imprecisely post-*Booker* to refer to certain departures from the advisory guideline range. When used precisely, the term 'variance' refers to departures based on § 3553(a) factors rather than departures under § 5, Part K, of the guidelines." 474 F.3d 888, 896 n.3 (6th Cir. 2007) (Gibbons, J., concurring).

"required to make the determinations under the sentencing guidelines and then after that, look at the guidelines as advisory only." The court referred to the Guidelines range twice again during its sentencing explanation. To the extent the government's argument alleges procedural error rather than substantive unreasonableness, it is reviewed for plain error. *Knows His Gun*, 438 F.3d at 918. Regardless, the government's argument fails under abuse of discretion review, and *a fortiori*, it fails under plain error review.

Next, the government argues that the district court unreasonably applied the § 3553(a) and Guidelines factors in seven ways, thus rendering the sentence substantively unreasonable. We address each argument in turn.

### 1.   Nature and Circumstances of the Offense

**[5]** The government claims that the district court failed to reasonably consider the "nature and circumstances of the offense," as required by 18 U.S.C. § 3553(a)(1). Specifically, the government notes that Autery actively solicited the pornography instead of just possessing it and that the court never mentioned this during the hearing. The record, however, shows that the court did reasonably consider the nature of the offense. While acknowledging that the illicit material was "terrible stuff" and that Autery had "ordered it knowing that it was wrong and illegal," the district court stated that there was "no evidence that [Autery] was purchasing evident child pornography involving real children." Moreover, there was a dispute over whether Autery solicited customized material (thus contributing directly to child exploitation), and that act was not an element of the offense to which Autery pled guilty. Certainly, the district court *could* have expressly considered this fact in fashioning an appropriate sentence. *See Rita*, 127 S. Ct. at 2465-66 (noting that "[t]his Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence"). However, espe-

cially given the uncertainty of the evidence on this issue, the district court did not abuse its discretion by declining to further consider the disputed evidence in imposing sentence.

## 2. History and Characteristics of the Defendant

**[6]** The government next contends that the district court misjudged "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), in determining the sentence. The government specifically alleges it was error to consider Autery's lack of a criminal history, because that characteristic is already part of the Guidelines criminal history calculation. This argument overlooks the fact that a defendant with a minor criminal history can still fall within Criminal History Level I. *See U.S. Sentencing Guidelines Manual* § 4A1.1 & Ch. 5, Pt. A (2007). Therefore, because Autery's Criminal History Level I did not fully account for his complete lack of criminal history, considering it as a mitigating factor was not redundant or improper. *See United States v. Rowan*, 530 F.3d 379, 381 (5th Cir. 2008) (holding probation reasonable for defendant convicted of possessing hundreds of hardcore child pornography images where defendant had no criminal history).

**[7]** The government also notes that Autery was a former reserve police officer and claims this fact should have been considered an aggravating factor, because Autery should have known the law and its consequences. The notion that a defendant's status as a former law enforcement officer justifies a *per se* sentence enhancement is dubious. Indeed, one could reasonably argue that a defendant's law enforcement service could, in certain circumstances, constitute a *mitigating* factor in sentencing because a former law enforcement officer has shown at some point in his past that he can lead an honorable and responsible life. Defense counsel frequently use similar arguments before sentencing courts in order to highlight a defendant's best qualities. Because the issue can cut either

way, the district court's failure to treat such service as an aggravating factor was not an abuse of discretion.

**[8]** In addition, the government takes exception to the district court's commenting on Autery's various positive characteristics, such as his having no history of substance abuse, no "interpersonal instability" nor "sociopathic or criminalistic attitudes," his motivation and intelligence, and that he has the support of his wife and children. But the government offers little support for why these attributes, which undoubtedly constitute "history and characteristics of the defendant," *see* 18 U.S.C. § 3553(a)(1), are inappropriate considerations. The government cites *United States v. Thompson*, 315 F.3d 1071 (9th Cir. 2001), for the proposition that, in departing downward, a district court should not rely on a defendant's lack of history of committing sexual abuse. To the extent *Thompson*'s *ratio decidendi* survives *Booker* (which we do not here decide), *Thompson* does not help the government. While the district court mentioned that Autery had no history of committing sexual abuse, the court also relied on the various other attributes listed above. Each of those attributes, in the reasonable judgment of the court, increases the likelihood that Autery can again become a productive, non-threatening member of free society, thus making more severe punishment less appropriate than if Autery lacked those characteristics.

**[9]** Our dissenting colleague objects to our reliance on the district court's characterization of Autery as not "fit[ting] the profile of a pedophile." He argues that the district court erred in making this finding because neither the PSR nor the district court itself described the elements of such a "profile" or why it was relevant to sentencing. However, § 3553(a)(1) merely directs the court to consider "the history and characteristics of the defendant." Nothing in this section requires the district court to base its application of the factor on the PSR, scientific studies, or anything other than the court's experience and judgment. *See* 18 U.S.C. § 3553(a)(1). The section also does not require the district court to provide an elaborate founda-

tion for its determination. *See id.* Here, the district court found, relying on its extensive experience and, in particular, the experience of handling "hundreds and hundreds" of other child pornography cases, that Autery did not "fit the profile of a pedophile." Under the district court's reasoned judgment, this "characteristic" of the defendant (like, *inter alia*, his lack of "interpersonal instability" and his motivation and intelligence) is unusual for someone in Autery's position. Indeed, the court found Autery "totally different than what . . . [the] court has normally experienced with people who are ordering this sort of child pornography." Thus, the court impliedly found that the other people he had sentenced for "ordering this sort of pornography" posed a greater threat to society than does Autery. As a result, this consideration is valid under § 3553(a)(1), and it was a reasonable basis for concluding that Autery's sentence should be lower than other defendants who do fit that profile. Accordingly, we cannot say that the court's judgment on this issue was an abuse of discretion, and, while it is clear that our dissenting colleague would have ruled otherwise had he been sitting as the sentencing judge, we do not believe he has shown that the district court here abused its discretion on this factor either.

### 3. Seriousness of the Offense, Respect for the Law, and Just Punishment

[10] The government next suggests that the sentence does not, under 18 U.S.C. § 3553(a)(2)(A), adequately "reflect the seriousness of the offense, . . . promote respect for the law, [or] provide just punishment for the offense." Reasonable minds can differ as to whether a five-year probation provides "just" punishment, but the district court clearly, and we believe, reasonably, weighed this factor in imposing sentence. First, the sentencing transcript reveals that the district court was desirous of doing what was "just" in this case. Furthermore, in its "Statement of Reasons," the court observed that the statute provides for a term of probation of between one and five years, and stated that it "impose[d] the maximum

term of probation because of the seriousness of the offense, to promote respect for the law, [and] to provide just punishment for the offense." Finally, Autery's sentence was not just a term of probation: (i) Autery was required to register as a sex offender, a punishment of lifelong significance (which can cause the listed person to become so socially ostracized that he has difficulty living in many communities); (ii) he is barred from viewing any pornography whatsoever; (iii) he is barred from being within 100 feet of places where minors congregate unless approved by his probation officer; (iv) he is not permitted to travel outside the State of Oregon without prior approval; (v) he is required to participate in mental health evaluation and counseling, including psychotherapy, and to take any prescription drugs as directed; (vi) he is not permitted to possess any firearm; (vii) he is barred from using any computer except for work, or, without approval, any other electronic media—such as a personal digital assistant or cellular phone—with Internet capability; and (viii) he is not permitted to have "direct or indirect" contact with anyone under the age of eighteen, except his own children. Although our colleague may disagree with the district court's decision on this factor, none of the government's arguments persuades us that the way the district court considered the "seriousness of the offense, respect for the law, and just punishment" was an abuse of discretion.

### 4. Adequate Deterrence

The government also argues that the sentence in this case does not reflect "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," in accordance with 18 U.S.C. § 3553(a)(2)(B). For the same reasons that the sentence passes muster under 18 U.S.C. § 3553(a)(2)(A), the district court's sentence is also not an abuse of discretion under this provision. Moreover, as a further deterrent, the district court threatened that if Autery violated any of the conditions of his probation, he would "be back before me and receive the maximum penalty allowed by

law." It is said that there is nothing like being sentenced to hang in the morning to focus a man's thoughts, and it is improbable that the district court's stern warning will be an ineffective deterrent in this case.

### 5. Need to Protect the Public

**[11]** The government next contends that the sentence imposed failed to "protect the public from further crimes of the defendant," pursuant to 18 U.S.C. § 3553(a)(2)(B). As the district court stressed, however, Autery's probation comes with many strings attached, which are detailed in Section 3 (Seriousness of the Offense, Respect for the Law, and Just Punishment), and the threat of maximum punishment if any condition of probation is violated, detailed in Section 4 (Adequate Deterrence). Moreover, as stated, Autery must register as a sex offender, a designation that carries both societal stigma and numerous practical restrictions designed to protect children. Under the circumstances, it was not an abuse of discretion to conclude that—compared with a prison sentence of forty-one to fifty-one months—a sixty-month probationary period combined with all the referenced restrictions will adequately protect the public.

### 6. Unwarranted Sentencing Disparities

The government also takes issue with the district court's alleged failure to impose a sentence reflecting "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6). The record shows, however, that the district court's sentence depended heavily on Autery's *dis*similarity with others convicted of the same offense. According to the district court, Autery did not "fit the profile of a pedophile." He is in many ways, the court found, qualitatively different from the "hundreds and hundreds" of others the court had encountered who had engaged in similar behavior. If this is true—and we have no basis reflected in the

record to conclude otherwise—then it was not an abuse of discretion to impose a sentence that is dissimilar from the sentence that those other defendants received.

## 7. Prospect for Rehabilitation

[12] Finally, the government argues that the district court erred when it improperly made rehabilitation one of the bases for the probation sentence. Section 3553(a)(2)(D) speaks to "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The government argues that Autery could have been ordered to undergo treatment in prison. The district court *could* have handed down such an order, but what the court did order was based on its knowledge of the case and what it believed were Autery's "exceptional" circumstances. Instead, the district court commented that, in its judgement, incarceration would *undermine* Autery's rehabilitation. Sentencing Hr'g Tr. at 14 (court stating that incarceration would likely create "a much more disruptive situation and, actually, could be more damaging than the rehabilitation that [it] contemplate[d] will work"). As a result, the court ordered Autery to undergo mental health counseling and to submit to any prescription mediation or other treatment deemed appropriate. Thus, rehabilitation was one of the factors most carefully considered by the district court in arriving at its sentence, and its conclusion that Autery's prospects for rehabilitation are greater out of prison than in is not unreasonable.

The dissent argues that the district court failed to articulate exactly why effective outpatient psychiatric treatment cannot be provided in a federal prison. We believe this criticism is misguided. First, the dissent seems to overlook the fact that the sole objective of § 3553(a)(2)(D) is not punishment, but the defendant's rehabilitation. *Cf. United States v. Tapia-Romero*, 523 F.3d 1125, 1126 (9th Cir. 2008) (noting that when imposing sentence, district court must recognize that

"imprisonment is not an appropriate means of promoting correction and rehabilitation") (quoting 18 U.S.C. § 3582(a)). Second, the dissent points to no authority, nor to anything in the record, that would undermine the district court's conclusion that professional, out-patient (non-institutional) psychiatric treatment would be most effective at rehabilitating Autery.

Moreover, while the Guidelines in this case called for a period of incarceration, the Guidelines are only one of several factors the district court must consider. *See Carty*, 520 F.3d at 991 (citing *Kimbrough*, 128 S. Ct. at 570). Here, the district court determined that the Guidelines' call for incarceration was overcome by the various § 3553(a) factors—such as § 3553(a)(2)(D)—that, in the district court's judgment, suggested that probation with psychiatric treatment was a more appropriate sentence. *See Rowan*, 530 F.3d at 381 (holding that sentence of probation was reasonable for defendant convicted of possession of child pornography where defendant had no criminal history, and district court believed he would benefit from ongoing psychological treatment).

In sum, the district court—based on its unique familiarity with the defendant, the case's circumstances, and numerous other cases like it—considered the required factors and imposed a sentence that was not substantively unreasonable. That sentence was not necessarily what this court would have imposed. But under our controlling precedent, that determination alone is insufficient for reversal: "[w]e may not reverse just because we think a different sentence is appropriate." *Carty*, 520 F.3d at 993.

Our dissenting colleague believes that our review is overly deferential to the district court and that we are affirming simply because we find no procedural error.[8] Dis. Op. at 1810

---

[8]The dissent refers to Autery as a "child pornographer." This term is misleading, as a "pornographer" is defined as "one that *produces* pornography." *Webster's Third New International Dictionary* 1767 (2002) (emphasis added). Without minimizing the seriousness of child pornography possession, we note that Autery was not charged with or convicted of producing pornography.

("[R]eview for abuse of discretion should be more than simply policing the district courts for proper procedure."). We respectfully disagree. Under *Gall* and *Carty*, we must consider both the procedural and substantive reasonableness of the sentence. *Gall*, 128 S. Ct. at 597; *Carty*, 520 F.3d at 993. In this opinion, we have carefully reviewed each criterion used by the district court in making its sentencing decision, compared those criteria against the record and the requirements of governing law requiring "sufficient justifications" for the sentence, *Carty*, 520 F. 3d at 992 (quoting *Gall*, 128 S. Ct. at 594), and we have found no abuse of discretion.

In contrast, although our colleague cites with disapproval the reasoning the district court used in making some of its sentencing decisions (to which we respond in each instance with citations from the record showing that the district court did properly address the issue in question), he seems mostly to figuratively curse the opacity of the guidance we have received from above. We readily concede that in this post-*Booker* era lower courts may occasionally feel a little like Hansel and Gretel, looking for the now-missing breadcrumbs that would lead us back to clarity in sentencing. However, *it is clear* that in determining the substantive reasonableness of a sentence, we are to "consider the totality of the circumstances" *id.* at 993, and that we are to give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance" because the sentencing judge "is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *See Gall*, 128 S. Ct. at 594. This we have done. The Supreme Court's instructions about the deference due to the district court because of its unique perspective is even more compelling in a highly unusual case, which the district court found this case to be, stating that it was "exceptional" and unlike the "hundreds and hundreds" of others that had come before it. Accordingly, we affirm.

## CONCLUSION

We hold that abuse of discretion is the proper standard of review where a party challenges a sentence's substantive reasonableness on appeal but did not object to the sentence's reasonableness before the district court. We further hold that the district court did not abuse that discretion in sentencing Autery to five years probation with conditions.

**AFFIRMED.**

TASHIMA, Circuit Judge, dissenting:

Defendant Autery pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) pursuant to a plea agreement. In the plea agreement, the parties agreed to a presumptive sentence of 41-51 months' imprisonment, which was the applicable range under the U.S. Sentencing Guidelines. Notwithstanding that agreement, the district court departed downward at least 14 levels and imposed a sentence of five years' probation. The government appeals. Because I agree with the government that the sentence is unreasonable under 18 U.S.C. § 3553(a), I respectfully dissent.[1]

When the Supreme Court in *Gall v. United States*, 128 S. Ct. 586 (2007), held that departures from the Sentencing Guidelines could be reviewed only for abuse of discretion, the Court did not intend to insulate district judges from "meaningful appellate review" of the sentences they impose. *Id.* at

---

[1] I agree with the majority on the applicable standard of review — that the substantive reasonableness of sentences should be reviewed for abuse of discretion rather than clear error, even when the appellant fails to object to the reasonableness of the sentence. I therefore concur in that portion of the majority opinion.

597. Yet the majority has interpreted *Gall*, along with *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc), as requiring appellate courts to adopt a posture so deferential that, so long as the district court facially applies the relevant 18 U.S.C. § 3553(a) factors, a sentence can almost never be reversed, no matter how substantively unreasonable it may be.

In this case, the district court sentenced a defendant, who showed little indication of being anything other than a run-of-the-mill child pornographer, to probation, rather than to the 41-51 months' imprisonment that the Sentencing Guidelines indicated and which the parties agreed was appropriate — a departure of at least 14 levels. Because the district court's reasoning in arriving at this sentence leaves me with a "definite and firm conviction that the district court committed a clear error of judgment," *United States v. Whitehead*, 532 F.3d 991, 996 (9th Cir. 2008) (Bybee, J., dissenting), I believe that the sentence was an abuse of discretion.

It is understandable that the majority would adopt a highly deferential standard of reviewing the substantive reasonableness of the district court's decision, given that the Supreme Court's opinion in *Gall* focused primarily on what an appellate court may *not* do. It may not overturn an out-of-Guidelines sentence merely because it "might reasonably have concluded that a different sentence was appropriate." 128 S. Ct. at 597. Nor may it require district courts to follow rigid mathematical formulas or demonstrate that extraordinary circumstances exist in order to justify a sentence outside the Guidelines. *Id.* at 595. Missing from the majority opinion in *Gall*, however, is any discussion of the circumstances under which a court of appeals may reverse a district court's sentence as substantively unreasonable. It is possible to read *Gall* as limiting the role of the court of appeals to ensuring that district courts follow the proper procedures in determining sentences, and that appears to be the trend of our case law. So long as the district court does not commit any procedural errors, the court of appeals should almost always defer to the

district court's familiarity with the case and greater experience in sentencing. *See Whitehead*, 532 F.3d at 993.

I do not believe, however, that the Court in *Gall* intended to require such extreme deference from courts of appeals. The Court explicitly stated that "the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions." *Gall*, 128 S. Ct. at 594. As Justice Alito noted in his dissent in *Gall*, "Appellate review for abuse of discretion is not an empty formality. A decision calling for the exercise of judicial discretion 'hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review.' " *Id.* at 607 (Alito, J., dissenting) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975)).

The key to a correct interpretation of *Gall* is to apply abuse-of-discretion review meaningfully without lapsing into the rigid formulas condemned in *Gall*. In two recent dissents, judges of this court have suggested that we apply a standard that has often been used in other abuse-of-discretion contexts; they would reverse a sentence where " 'we have a definite and firm conviction that the district court committed a clear error of judgment' in imposing a particular sentence." *United States v. Ruff*, 535 F.3d 999, 1005 (9th Cir. 2008) (Gould., J., dissenting) (quoting *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001); *accord Whitehead*, 532 F.3d at 996 (Bybee, J., dissenting). The Eleventh Circuit has adopted this standard in reviewing sentences for substantive reasonableness. *See, e.g.*, *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). The "definite and firm conviction" standard distinguishes an abuse of discretion from a mere difference of opinion. Abuse of discretion as now applied in this circuit to the substantive review of sentences for reasonableness is nothing more than a standardless and empty formalism — it comes close to no appellate review at all.

Applying the correct standard, I conclude that the district court abused its discretion by sentencing Autery to probation.

The factors cited by the district court do not support its conclusion that Autery was uniquely situated for someone convicted of his offense.[2] It is true that he had apparently begun seeking child pornography relatively recently before his arrest, and there is no evidence that he ever attempted to molest a child. But both of those factors have already been taken into account in calculating the appropriate offense level under the Guidelines. His lack of criminal history placed him in Category I, rather than a higher category. Likewise, if he had had sexual contact with a minor, his base offense level would have been increased beyond level 22. Nor is there anything about the other circumstances related to Autery's crime that makes him appear significantly less culpable than a typical child pornographer.

The district court found that Autery did not possess child pornography featuring depictions of actual minors. This finding, however, does not withstand scrutiny. First, Autery certainly attempted to purchase child pornography featuring depictions of actual minors. He solicited a person he believed to be a mother of two young girls to produce sexually explicit videos featuring her children.[3] Fortunately, the woman was an undercover agent, and no children were sexually abused for Autery's gratification. Moreover, Autery pled guilty to Count 3 of the indictment, which charged that "defendant herein did knowingly possess images containing child pornography . . . which contained visual depictions of *actual minors* engaged in sexually explicit conduct . . . ." (Emphasis added.) This finding is clearly erroneous and cannot supply any basis for the reasonableness of the sentence.

---

[2]I do not mean to suggest that a defendant must be unique or extraordinary in order to merit a below-Guidelines sentence. I refer to uniqueness here because the district court justified its sentence on the basis that Autery was unique for a child pornographer.

[3]Although the majority takes issue with my characterization of Autery as a "child pornographer," Maj. op. at 1803 n.8, it is a fair characterization of one who solicits the production of made-to-order child pornography.

The district court made other puzzling findings which find no support in the record. It found that Autery did "not fit the profile of a pedophile." But nothing in the record — including the presentence investigation report[4] — tells us what the "profile" that the district court relied on is, or why it was relevant to sentencing. After all, Autery was convicted of possession of child pornography, a crime which does not include as an element that the offender "fit the profile of a pedophile."[5] Yet, the district court seemed to believe that a child pornographer who did not "fit the profile of a pedophile" was undeserving of a prison sentence.

The district court also found that "Defendant needs outpatient psychiatric monitoring and management, and cannot be accommodated adequately in a federal institution . . . ." This finding is either startlingly blunt or clearly erroneous. First, it is unexplained, except that the court concluded that Autery needed "outpatient psychiatric monitoring and management." But why such outpatient treatment cannot be provided within the federal prison system is unarticulated. Viewed from a certain perspective, it may be true that, as the district court found, Autery "cannot be accommodated adequately in a federal institution." But if it is true of Autery's circumstance, then surely it is equally true for thousands of other federal prisoners. We are, indeed, starting down a slippery slope when we accept the inadequacy of the federal prison system as justifying the reasonableness of a downward departure that results in no prison time for an offense which would merit a prison sentence of three and a half years under the Guidelines. These "findings" also do not support the reasonableness of Autery's sentence.

---

[4]The Probation Officer could not identify any factor that would warrant departure from the advisory Guidelines range.

[5]Presumably, if Autery "fit the profile of a pedophile," it would be reflected either in his criminal history or his relevant conduct under U.S.S.G. § 1B1.3, which would increase his offense level.

The majority does not seriously attempt to justify the district court's reasoning. The majority correctly points out that it was not entirely redundant for the district court to reduce the defendant's sentence for his lack of a criminal history when that was already taken into account in his criminal history Category I. A Category I offender may have a limited prior history, rather than no history at all. Maj. Op. at 1797. But the majority does not explain how this relatively minor distinction could reasonably be relied on as a meaningful difference in arriving at a 14 level departure. Neither does the majority explain how the district court could have been correct that a sentence of probation for solicitation of child pornography provides just punishment or reflects the seriousness of the offense. The most the majority can say on this point is that "reasonable minds can differ." Maj. Op. at 1799. And the majority accepts that it is beyond the role of this court to question the district court's conclusion that the defendant was qualitatively different from other offenders, no matter how flimsy the evidence or the district court's reasoning were. Thus, the majority believes it has no basis to question the district court's belief that Autery's extremely low sentence does not represent an unwarranted sentencing disparity between Autery and other similar offenders. Maj. Op. at 1801-02.

While the district court followed the proper procedures and explained its reasoning for departing downward from the Guidelines, review for abuse of discretion should be more than simply policing the district courts for proper procedure. In this case, the sentence cannot withstand such review. The court in *Gall* clearly suggested that a more serious level of review was required, even as it rejected the use of strict mathematical proportionality: "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines." 128 S. Ct. at 595; *accord Carty*, 520 F.3d at 993. The district court's justifications in this case may not be entirely implausible, but neither are they at all convincing in explaining such a radical depar-

ture from the Guidelines. The district court did not merely assign a sentence from a range of reasonable choices, it deviated below any range of reasonableness and, in doing so, seriously erred.

The ordinariness of Autery as a defendant, and the inappropriateness of the district court's imposition of a probationary sentence, is particularly pronounced in comparison with the circumstances of the defendant in *Gall*. Brian Gall participated in a conspiracy to sell ecstasy while attending college in Iowa. 128 S. Ct. at 591-92. He voluntarily withdrew from the conspiracy after seven months and moved to Arizona, where he lived as a law-abiding citizen. *Id.* at 592. When his role in the drug ring was discovered by law enforcement, he confessed his involvement and cooperated fully with the authorities. *Id.* While he was in Iowa on bail during the time his case was pending, he started his own construction business. *Id.* Reasonable minds might differ as to the proper sentence for Gall, but he provided strong evidence that he had self-rehabilitated and was no longer a threat to commit more crimes. There were clear reasons to support the district court's decision that Gall differed from other defendants convicted of similar crimes and that probation was more appropriate than a within-Guidelines sentence of 30-37 months.

Here, the district court followed the proper procedures, but the sentence it reached, unlike in *Gall*, is simply not supported by the record. A meaningful abuse-of-discretion review can overturn a sentence in a case like this and maintain some sense of uniformity in sentencing while still allowing district courts to sentence defendants such as Gall to sentences substantially lower than suggested by the Guidelines.

Because I am firmly convinced that the district court committed a clear error in judgment in sentencing Autery, I would vacate the sentence as unreasonable and remand the case to the district court for resentencing.