**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Jimir VALLE–MARTINEZ,
Defendant—Appellant.**

No. 06–10597.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2009.

Filed July 6, 2009.

U.S. Courthouse, Tucson, AZ, for Plaintiff–Appellee.

Leslie A. Bowman, Esq., Law Offices of Leslie A. Bowman, Tucson, AZ, for Defendant–Appellant.

Before: D.W. NELSON, W. FLETCHER and TALLMAN, Circuit Judges.

## MEMORANDUM [*]

Jimir Valle–Martinez ("Valle–Martinez"), the driver of a pick-up truck packed with nineteen occupants, including many undocumented aliens, led law enforcement on a high-speed chase that tragically ended in a multi-vehicle, roll-over accident. Six people died and many more were seriously injured. Following an eight-day trial, the jury convicted Valle–Martinez on fifteen counts of bringing in and transporting illegal aliens for profit which caused serious bodily injury or placed life in jeopardy and resulted in death, in violation of 8 U.S.C. §§ 1324(a)(1)(A), 1324(a)(1)(B), and 1324(a)(2)(B). The district court imposed a 420–month sentence.

Valle–Martinez appeals, alleging numerous claims of error. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Valle–Martinez first contends that there was insufficient evidence to support his convictions on the "bringing to" offenses [1]

Douglas Tom Ferraro, Esq., USTU–Office of the U.S. Attorney Evo A. Deconcini

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. Following the lead of the relevant cases, we use the terms "brings to" and "bringing to" interchangeably when referring to the offenses described in § 1324(a)(2). *See, e.g., United States v. Lopez,* 484 F.3d 1186, 1187 n. 1 (9th Cir.2007) (en banc).

(Counts 1 through 8) because the crime had been completed prior to his involvement and he only transported aliens within the United States. We reject this claim.

In *United States v. Lopez*, 484 F.3d 1186 (9th Cir.2007) (en banc), we held that the "bringing to" offense extends beyond illegal entry and terminates only "when the initial transporter drops the aliens off at a location in the United States." *Id.* at 1194. We made clear that the "termination point of the 'brings to' offense [is marked by] the end of the initial wrongdoer's physical involvement," and thus might not occur until after the transporter and the aliens have traveled through several districts. *Id.* at 1193, 1197.

[1] Applying *Lopez* to the facts of the instant case, the "bringing to" offense did not terminate so as to absolve Valle–Martinez of culpability for those charges. At no point did the "initial wrongdoer's physical involvement" end. Nor were the aliens dropped off at a location inside the United States. The guides who led the aliens across the border, including Valle–Martinez's co-defendant Jose Luis Zepeda–Cruz, remained involved at all times leading up to the accident. The fact that the smuggling party altered its mode of transportation—from foot to vehicle—does not change the calculus.

Moreover, the record in this case contains significant evidence of Valle–Martinez's involvement in the alien smuggling conspiracy. We find the evidence sufficient to sustain conviction for conspiring to unlawfully bring to the United States and transport an undocumented alien. *See United States v. Hernandez–Orellana*, 539 F.3d 994, 1006–07 (9th Cir.2008) (noting *Lopez's* limited application to conspiracy counts).

## II

[2] Valle–Martinez next challenges the district court's decision to allow Immigration and Customs Enforcement Agent William Hamilton to testify about the structure and operation of alien smuggling organizations in the region. Agent Hamilton's testimony assisted the jury in understanding alien smuggling organizations, smugglers' patterns of conduct and modes of operation, and Valle–Martinez's particularized role in the illegal for-profit enterprise. The evidence was reliable and relevant. Valle–Martinez's argument to the contrary is foreclosed by our recent decisions in *United States v. Lopez–Martinez*, 543 F.3d 509, 514–15 (9th Cir.2008), and *United States v. Mejia–Luna*, 562 F.3d 1215, 1219 (9th Cir.2009).

We also reject Valle–Martinez's contention that Agent Hamilton's expert testimony was unfairly prejudicial because he also testified as a fact witness. Although testimony in dual capacities can in some circumstances raise concerns of jury confusion, that is not the situation in the instant case. The district court took adequate precautions to minimize any possible prejudice, including limiting the scope of expert testimony, instructing the jury regarding the weight it was to give such testimony, and ensuring that defense counsel had a full opportunity to cross-examine Agent Hamilton. Any theoretical risk that a jury could have been confused or biased by Agent Hamilton's dual role was sufficiently alleviated. Valle–Martinez fails to specify any instance where the lay and expert testimony in this particular case allegedly caused prejudice. *Cf. United States v. Freeman*, 498 F.3d 893, 902–06 (9th Cir.2007) (finding that a dual witness overstepped bounds during factual testimony by offering lay opinion, but that any error was harmless).

## III

[3] The district court did not abuse its discretion in permitting the jury to view

the two primary vehicles involved in the accident. *Cf. Hughes v. United States,* 377 F.2d 515, 516 (9th Cir.1967). As Valle–Martinez acknowledges, the condition of the truck cab was relevant evidence.

We also reject Valle–Martinez's contention that "by making sounds and by using facial expressions" the jury engaged in premature deliberations. This argument, which relates more to the district court's alleged failure to address jury misconduct rather than its decision to permit the jury view in the first place, also fails. Counsel did not articulate a jury misconduct argument before the district court. Nor did she request a curative jury instruction from the bench or move for a mistrial on this basis. Because Valle–Martinez provided the district court no opportunity to address any alleged jury misconduct, we deem this argument waived on appeal. *See Lakeside–Scott v. Multnomah County,* 556 F.3d 797, 803 n. 6 (9th Cir.2009) ("It is well-established that an appellate court will not consider issues that were not properly raised before the district court."). Even taking Valle–Martinez's characterization of the jury view as true, we find no plain error as Valle–Martinez fails to point to any evidence that even a single juror was improperly polluted so as to render his trial unfair. *See Davis v. Woodford,* 384 F.3d 628, 653 (9th Cir.2004).

## IV

■ Valle–Martinez raises a myriad of arguments claiming that the district court erred in permitting evidence of a recorded jail telephone conversation during which he acknowledged his role as a "coyote"—a term commonly used to describe a person who smuggles illegal entrant aliens. None is persuasive.

Valle–Martinez first argues that the prosecution failed to lay the proper foundation for the telephone recording. We disagree. The call at issue was made from Valle–Martinez's prison housing unit, using his unique pin and inmate identification numbers, and a witness testified at trial that the voice on the call in question was indeed that of Valle–Martinez. *See* Fed. R.Evid. 901; *see also United States v. Thomas,* 586 F.2d 123, 133 (9th Cir.1978). Valle–Martinez's "foundation" arguments go to the weight of this evidence, not its admissibility. *See United States v. Black,* 767 F.2d 1334, 1342 (9th Cir.1985).

We also reject Valle–Martinez's claim that his due process and equal protection rights were violated. In *United States v. Van Poyck,* 77 F.3d 285 (9th Cir.1996), we held that "any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls." *Id.* at 291. Because no fundamental constitutional right is at stake and because prisoners are not a suspect class, *see Glauner v. Miller,* 184 F.3d 1053, 1054 (9th Cir.1999) (per curiam), the government must show only that the practice bears a rational relationship to a legitimate governmental objective to meet the requirements of equal protection, *see Webber v. Crabtree,* 158 F.3d 460, 461 (9th Cir.1998) (per curiam). *Van Poyck* establishes the legitimate governmental objective that justifies such recordings—*i.e.,* institutional security concerns. 77 F.3d at 291.

Nor does the evidence pertaining to the jail recording violate his Sixth Amendment right of confrontation. The question posed by the other speaker was not "testimonial." *See Davis v. Washington,* 547 U.S. 813, 828, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

Finally, we reject Valle–Martinez's assertion that the government, by monitoring and recording jail telephone calls, was effectively wiretapping inmates without probable cause. To the extent this is a

Fourth Amendment challenge, *Van Poyck* forecloses this argument. 77 F.3d at 291. To the extent Valle–Martinez is arguing that the government violated the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, this argument too must fail because he consented to the recording by making the call. *See* 18 U.S.C. § 2511(2)(c); *Van Poyck,* 77 F.3d at 291 (finding that inmate consented to the recordings).

## V

A presentence report ("PSR") was prepared and circulated, and both parties filed pre-hearing materials at the sentencing phase. After considering the parties' arguments and evidence, the district court imposed a sentence of 420 months, followed by five years of supervised release. Valle–Martinez raises various challenges to the sentencing determination.

## A

The district court indicated on the record that it was applying the "clear and convincing" standard at sentencing. We therefore reject Valle–Martinez's argument that the court improperly failed to do so.

## B

In calculating the advisory Guidelines range, the district court, as the PSR recommended, invoked the cross-reference provision found in § 2L1.1(c) of the Sentencing Guidelines Manual ("U.S.S.G.") and applied the base offense level for second-degree murder, codified in U.S.S.G. § 2A1.2. We reject Valle–Martinez's various challenges to this cross-reference.

### 1

■ Valle–Martinez initially contends that § 2L1.1(c) is unconstitutionally vague and its application violated his due process right to notice. We disagree. The cross-reference provision unambiguously states the circumstances when the court is to apply the appropriate murder Guideline. While Valle–Martinez may dispute whether the facts of his case justify its application here, to say that "[n]o person of ordinary intelligence" could know when § 2L1.1(c) might apply is not credible. We further note that § 2L1.1(c) is not unique. Similarly-worded cross-reference provisions are found throughout the Sentencing Guidelines. *See, e.g.,* U.S.S.G. §§ 2B3.1(c) (robbery), 2B3.2(c)(1) (extortion by force), 2D1.1(d)(1) (drugs). We have upheld their application. *See, e.g., See United States v. Lynch,* 437 F.3d 902, 915–16 (9th Cir.2006) (en banc) (affirming application of murder cross-reference to impose 20–year sentence); *United States v. Gamez,* 301 F.3d 1138, 1146–50 (9th Cir.2002) (affirming application of § 2D1.1(d)(1) to enhance sentencing range).

### 2

■ Valle–Martinez also makes what amounts to an *Apprendi* argument. *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We reject it. The jury found beyond a reasonable doubt that the offense resulted in the death of a person, which increased the statutory maximum to life imprisonment. *See* 8 U.S.C. § 1324(a)(1)(B)(iv) (stating that a person may "be punished by death or imprisoned for any term of years or for life"). Accordingly, there is no *Apprendi* violation here. *See Gamez,* 301 F.3d at 1149–50 (holding that the district court's factual findings underlying the cross-reference of § 2D1.1(d)(1) did not violate *Apprendi* ).

### 3

Valle–Martinez also contends that there was insufficient evidence for the district court to conclude that he acted with "malice aforethought," a necessary element for

murder. *See* 18 U.S.C. § 1111(a). Here, having sat through the trial and having heard all the evidence first-hand, the district judge made his findings regarding malice unequivocal.

■ Valle–Martinez provides little argument to support his position, except to state that eluding law enforcement by speeding and ignoring traffic laws "in and of itself is insufficient to prove the *mens rea,*" citing *United States v. Hernandez–Rodriguez,* 975 F.2d 622 (9th Cir.1992) (holding that the defendant's flight in that case showed recklessness, but did not amount to anything more). But, the instant case is materially different, both legally and factually, than *Hernandez–Rodriguez.*[2] There, the defendant led officers on a car chase that never exceeded 80 mph on the freeway or 45 to 50 mph on surface streets and resulted in no injuries. *Id.* at 624. Valle–Martinez's conduct, by contrast, was far more egregious. He packed nineteen people in his vehicle—eleven of whom were unsecured in the bed of the pick-up—and began his dangerous driving from the outset, well before he even encountered law enforcement. Not only did he completely disregard traffic signs and signals, he drove at speeds in excess of 100 mph, wove through traffic, at times veering into oncoming traffic and forcing vehicles to take evasive action, and ignored passengers' pleas to stop. Valle–Martinez did not noticeably slow his speed when traveling through densely populated areas or through intersections or when officers appeared to abandon the chase. The fatal chain-reaction accident occurred as he attempted to speed through a busy intersection. His truck was traveling almost 100 mph when it struck the median, went airborne, and flipped onto a Dodge Dakota,

killing its occupants. Despite the catastrophic outcome, Valle–Martinez then fled the scene and immediately rejoined the same smuggling enterprise. The district court did not clearly err in finding malice on this record.

In sum, the district court did not err in applying the § 2L1.1(c) cross-reference in calculating Valle–Martinez's final advisory Guidelines range on the evidence before it.

### C

■ Although he never accepted responsibility or expressed remorse for his crimes, Valle–Martinez argues on appeal that he was wrongly "penalized" and that his due process rights were violated because he was not awarded a two-level reduction for acceptance of responsibility under § 3E1.1(a). This argument is without merit. The cases he cites do not say, as he alleges, that a court cannot withhold the reduction when a defendant invokes his right to silence. In fact, they state the opposite: "Mere assertion of a Fifth Amendment right to remain silent ... cannot be grounds for a more lenient sentence; some evidence of contrition is required." *United States v. Piper,* 918 F.2d 839, 840 (9th Cir.1990) (per curiam). The district court properly withheld the two-level reduction under § 3E1.1(a).

### D

■ Valle–Martinez next argues that the district court failed to provide notice pursuant to Federal Rule of Criminal Procedure 32(h) that it intended to depart from the applicable Guidelines range. The rule only requires notice when the district court intends to depart based on grounds

---

**2.** Hernandez–Rodriguez was convicted of transporting illegal aliens in violation of § 1324(a)(1)(B), and appealed his sentence. We held that a district court can apply an enhancement under § 3C1.2 for reckless endangerment and also depart upward under § 2L1.1. *Hernandez–Rodriguez,* 975 F.2d at 624.

not otherwise presented in the PSR or in the parties' sentencing memoranda. *See United States v. Cruz–Perez*, 567 F.3d 1142, 1146–47 (9th Cir.2009). Here, the PSR plainly identifies the number of deaths, the loss of a fetus, the many serious injuries, as well as the under-representation of criminal history as possible grounds for a departure. Rule 32(h) did not require that the court itself provide additional notice that it might depart on these grounds.

 Further, Rule 32(h) did not require prior notice before the court applied an obstruction of justice adjustment based on Valle–Martinez's fight with testifying co-defendant Julio Garcia, which occurred outside the courtroom immediately before the sentencing hearing. This adjustment was made pursuant to § 3C1.1, and therefore is not a "departure" as contemplated by Rule 32(h). *See United States v. Autery*, 555 F.3d 864, 872 n. 7 (9th Cir.2009) (quoting *United States v. Smith*, 474 F.3d 888, 896 n. 3 (6th Cir.2007) (Gibbons, J., concurring)). As the Supreme Court instructs, in the post-*Booker* era of advisory Sentencing Guidelines, Rule 32's notice requirement should not be extended beyond the text of the rule. *Irizarry v. United States*, —— U.S. ——, ——, 128 S.Ct. 2198, 2202, 171 L.Ed.2d 28 (2008).

### E

Despite Valle–Martinez's argument to the contrary, we are satisfied that the district court considered the § 3553(a) factors when determining his sentence. *See United States v. Diaz–Argueta*, 564 F.3d 1047, 1051–52 (9th Cir.2009) (holding that the district court's calculation of the applicable Guidelines range and statement that it had "carefully considered the Presentence Report and the comments of counsel, and the memorandum filed on behalf of the defendant" were sufficient to conclude that it had properly accounted for the § 3553(a) factors in fashioning a sentence). Here, the district court correctly calculated and applied the advisory Guidelines range. Moreover, the court indicated that the nature and circumstances of the instant offenses, coupled with the seriousness of the outcome and Valle–Martinez's conduct following the incident weighed heavily into the sentencing determination. The district court also indicated on the record that it had reviewed and considered the PSR and the parties' sentencing materials, which thoroughly debated the implications of the § 3553(a) factors. In fact, the court agreed with Valle–Martinez's sentencing arguments in several respects.

Based on the record, we are convinced that the court properly considered the § 3553(a) factors at sentencing. The sentencing judge "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007); *see also* 18 U.S.C. § 3553(c).

### F

 Finally, Valle–Martinez alleges that the sentence is substantively unreasonable. We are unconvinced by his primary argument regarding sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). Valle–Martinez's degree of culpability far exceeds that of his co-conspirators and justifies the more severe sentence. He was the driver whose conduct directly caused the accident and, among other tragic consequences, the deaths of six human beings. None of the other § 3553(a) factors weigh in favor of lenity, especially considering the immense harms caused by Valle–Martinez's conduct, his failure to accept responsibility or show remorse, his flight from the scene, and his criminal

record. The district court did not abuse its discretion in imposing a 420–month Guidelines sentence. *See United States v. Carty,* 520 F.3d 984, 993 (9th Cir.2008) (en banc).

## VI

Any additional arguments not specifically addressed above are also rejected. *See Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir.2003). For the foregoing reasons, we affirm Valle–Martinez's conviction and sentence.

**AFFIRMED.**